# CYNTHIA A. JAWORSKI *v.* HARRY KIERNAN
## (SC 15562)

Callahan, C. J., and Borden, Berdon, Katz and McDonald, Js.

Argued March 26—officially released June 17, 1997

*Michael E. Riley*, with whom were *Michael J. O'Sullivan* and *Joseph Busher*, for the appellant (defendant).

*David W. Cooney*, with whom, on the brief, was *Kathryn Calibey*, for the appellee (plaintiff).

*Opinion*

CALLAHAN, C. J. The sole issue in this appeal is what duty of care the defendant, Harry Kiernan, owed the plaintiff, Cynthia A. Jaworski, while both were participating on opposing teams in an adult coed soccer game sponsored by the recreation department of the town of South Windsor. We conclude that the defendant owed the plaintiff a duty of care to refrain from reckless or intentional conduct. Because the jury determined that the defendant's conduct, which caused the plaintiff's injuries, was negligent only, and not reckless or intentional, we reverse the judgment of the trial court.

The jury reasonably could have found the following facts. The South Windsor recreation department sponsors an outdoor adult coed soccer league. On May 16, 1993, during a game, the defendant made contact with the plaintiff while she was shielding the soccer ball from the opposition so that the goalie on her team could retrieve the ball. As a result of this incident, the plaintiff suffered an injury to her left anterior cruciate ligament, which caused a 15 percent permanent partial disability of her left knee.

The plaintiff brought this action against the defendant in two counts. In the first count, she alleged that the defendant failed to exercise due care and that his conduct was negligent and careless in that he "hit" and

"tripped" her from behind and that he challenged a female player, both in violation of league rules.[1] The plaintiff further alleged that the defendant's negligent conduct caused her injury. In the second count, the plaintiff alleged that the defendant's conduct was wanton and reckless, citing the same violations of league rules, and claiming that his conduct caused identical harm. The defendant moved to strike the plaintiff's negligence count, claiming that a participant in an athletic contest is, as a matter of law, not liable to a coparticipant for injuries sustained as a result of simple negligence during the playing of the game. The defendant's motion was denied.[2] The defendant then filed a special defense to the plaintiff's action, alleging that the plaintiff's own conduct was negligent, and that the plaintiff's negligence exceeded his alleged negligence. The jury returned a verdict for the plaintiff on the first count of her complaint, the negligence count, and found no comparative negligence attributable to the plaintiff. The jury found for the defendant on the second count of the plaintiff's complaint wherein she had alleged reckless conduct. The jury awarded the plaintiff damages in the amount of $20,910.33, the exact amount of her medical bills.

Both parties filed posttrial motions with respect to the verdict. The defendant moved to set aside the ver-

---

[1] One rule in effect for league games was the "challenge rule," which provides: "No male player may challenge a female player, however, he may 'post up' if more than six feet away at the time of possession. In the event of an infraction, the female player will be awarded a direct free kick (the exception is [the] goalie in the penalty area).

"Any male player who is called for challenging a female player twice during the course of a game may be charged with unsportsmanlike conduct (at discretion of referee) and awarded a yellow card." South Windsor Recreation Dept., Adult Coed Soccer Program Rules and Regs. (1992).

[2] The defendant also moved to strike the reckless conduct count for failing to allege the necessary elements for an action founded on reckless conduct. That motion also was denied. That ruling, however, is not before us on appeal.

dict and for judgment notwithstanding the verdict as to the negligence count, claiming, again, that an "action for personal injuries sustained in an athletic competition must be predicated on recklessness and not mere negligence." The plaintiff also moved to set aside the verdict as to the negligence count, claiming that the verdict was "inadequate as a matter of law due to the jury's failure to award noneconomic damages." The plaintiff therefore moved the court to order an additur. The court denied the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict. The court, however, granted the plaintiff's motion for an additur and conditionally granted her motion to set aside the verdict. The court ruled that if the defendant did not file a $45,000 additur with the clerk or if the plaintiff did not accept such an additur, the motion to set aside the verdict would be granted, and a new trial on the first count as to both liability and damages would be ordered. See *Fazio* v. *Brown*, 209 Conn. 450, 455–58, 551 A.2d 1227 (1988). If, however, the additur was filed and accepted, judgment would enter in the sum of $65,910.33.[3] The defendant did not file an additur. Consequently, the verdict as to the first count was set aside, and a new trial was ordered as to that count.

The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).[4] Because we conclude that participants in a team athletic contest owe a duty to refrain only from reckless or intentional conduct toward other participants, we reverse in part the judgment and remand the case with direction to strike the first count of the plaintiff's complaint.

---

[3] This figure represents the jury's award of $20,910.33 plus the $45,000 additur.

[4] The plaintiff filed a cross appeal in this action, which was subsequently withdrawn.

The plaintiff, in support of the trial court's conclusion that negligence is the proper standard of care to apply to team athletic competition, argues that the theory of negligence is flexible enough to fix a person's standard of care for any set of circumstances.[5] In addition, the plaintiff cites *Walsh* v. *Machlin*, 128 Conn. 412, 23 A.2d 156 (1941), wherein the plaintiff was injured when struck by a golf ball, for the proposition that we have already determined that negligence is the appropriate standard to apply to conduct that occurs during an athletic contest. In particular, the plaintiff points to our statement in *Walsh* that "[i]t is undisputed that the duty to the plaintiff which rested upon the defendant while playing this game was the usual one of reasonable care under the circumstances." Id., 414. The plaintiff also argues that the assumption of risk principles upon which a reckless conduct standard of care is based—i.e., that plaintiffs have assumed the risk of negligent conduct, but not of reckless or intentional conduct, by their participation in the athletic con-test—(1) are incompatible with Connecticut law, and

[5] The jury was instructed that it could consider the following factors when assessing the defendant's alleged negligence: "In the present context you may wish to consider the following circumstances, along with any other you deem relevant in determining whether the defendant breached his duty to act as a reasonable person under all of the circumstances of a sports event. What type of sport and game were involved, which in this case was an amateur coed recreational soccer game. The generally accepted customs and practices of amateur coed recreational soccer including the types of contact and the level of violence generally accepted in such games; whether the game was conducted pursuant to a recognized set of rules, and, if so, what those rules were; whether the conduct as you find it to be violated a rule of the game, and, if so, whether the rule was designed for the safety of participants; what risks were and were not inherent in the coed recreational soccer game as was expected to be played in this setting; the presence or absence of protective equipment; the ages, physical characteristics and skills of the participants; what degree of competitiveness was involved; what knowledge of the rules and customs of the game the participants possessed; what relationship the conduct of the participants bore to the ultimate purpose of the contest."

(2) have been replaced by General Statutes § 52-572h,[6] and therefore, the reckless conduct standard is inappropriate. Last, the plaintiff makes a public policy argument, stating that "society has an obligation not to tolerate behavior which is unreasonable, especially when it involves the violation of [athletic] safety rules."

The defendant, on the other hand, summarizes cases from foreign jurisdictions, the vast majority of which has adopted an intentional or reckless conduct standard of care for athletic contests. He also presents two public policy arguments, which he contends support that conclusion: (1) promoting vigorous competition and participation; and (2) avoiding a flood of litigation. Finally, the defendant challenges the plaintiff's contention that the theory of assumption of risk was completely abolished by the enactment of § 52-572h.[7]

We first note that the determination of whether a duty exists between individuals is a question of law. *Petriello* v. *Kalman*, 215 Conn. 377, 382, 576 A.2d 474 (1990); *Shore* v. *Stonington*, 187 Conn. 147, 151, 444

---

[6] General Statutes § 52-572h provides in relevant part: "(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section. . . .

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party. . . .

"(*l*) The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished. . . ."

[7] In light of our conclusion that, as a matter of policy, the defendant owed the plaintiff a duty to refrain only from reckless or intentional conduct, irrespective of any notions of assumption of risk, we need not address this issue.

A.2d 1379 (1982). Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty. *Petriello* v. *Kalman*, supra, 382–83. When "the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992) . . . ." (Citations omitted; internal quotation marks omitted.) *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996).

"Duty is a 'legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual.' 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, p. 25-7. Although it has been said that 'no universal test for [duty] ever has been formulated'; W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. 'The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?'. . . *Frankovitch* v. *Burton*, 185 Conn. 14, 20–21, 440 A.2d 254 (1981); *Noebel* v. *Housing Authority*, 146 Conn. 197, 200–201, 148 A.2d 766 (1959); *Orlo*

v. *Connecticut Co.*, 128 Conn. 231, 237, 21 A.2d 402 (1941). . . .

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed. See, e.g., *Maloney* v. *Conroy*, 208 Conn. 392, 400–401, 545 A.2d 1059 (1988) (looking beyond foreseeability, this court imposed limitations on the right of a bystander to recover for emotional distress that allegedly resulted from medical malpractice of doctors in their treatment of the plaintiff's . . . mother). A further inquiry must be made, for we recognize 'that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' W. Prosser & W. Keeton, supra, § 53, p. 358. 'While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.' . . . *Maloney* v. *Conroy*, supra, 401–402. The final step in the duty inquiry, then, is to make a determination of 'the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results.' W. Prosser & W. Keeton, supra, § 43, p. 281." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 385–86, 650 A.2d 153 (1994).

Our first step in an analysis of whether a duty exists and the extent of the defendant's duty, therefore, is to determine the foreseeability of the plaintiff's injury, i.e., whether a reasonable person in the defendant's position, knowing what he knew or should have known, would have anticipated the harm that resulted from his actions. Soccer, while not as violent a sport as football,

is nevertheless replete with occasions when the participants make contact with one another during the normal course of the game. When two soccer players vie for control of the ball, the lower limbs are especially vulnerable to injury.[8] If a player seeks to challenge another player who has possession of the ball or seeks to prevent another player from gaining possession of the ball,[9] the resulting contact could reasonably be foreseen to result in injury to either player. We conclude, therefore, that the plaintiff's injury was foreseeable.

Having concluded that the plaintiff's injury was a foreseeable consequence of the defendant's actions, we need to determine as a matter of policy the extent of the legal duty to be imposed upon the defendant. In order to determine the extent of the defendant's responsibility, we consider: (1) the normal expectations of participants in the sport in which the plaintiff and the defendant were engaged; (2) the public policy of encouraging continued vigorous participation in recreational sporting activities while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. See, e.g., *Maloney* v. *Conroy*, supra, 208 Conn. 400–401 (looking beyond foreseeability to other pragmatic concerns to limit liability).

In athletic competitions, the object obviously is to win. In games, particularly those played by teams and involving some degree of physical contact, it is reasonable to assume that the competitive spirit of the participants will result in some rules violations and injuries.

---

[8] Indeed, the league in which the parties participated, cognizant of probable leg injuries, required participants to wear shin guards and prohibited the use of metal spikes on participants' shoes.

[9] The jury returned a general verdict for the plaintiff on the negligence count, and therefore, made no finding regarding whether the plaintiff had possession of the ball when the injury occurred and whether the challenge rule; see footnote 1 of this opinion; had been violated.

That is why there are penalty boxes, foul shots, free kicks, and yellow cards. Indeed, the specific rules applicable to *this game* demonstrate that rules violations were expected in the normal course of the game. See footnote 1 of this opinion. Some injuries may result from such violations, but such violations are nonetheless an accepted part of any competition. Simply put, when competitive sports are played, we expect that a participant's main objective is to be a winner, and we expect that the players will pursue that objective enthusiastically. We also anticipate that players in their enthusiasm will commit inadvertent rules violations from which injuries may result. The normal expectations of participants in contact team sports include the potential for injuries resulting from conduct that violates the rules of the sport. These expectations, in turn, inform the question of the extent of the duty owed by one participant to another. We conclude that the normal expectations of participants in contact team sports counsel the adoption of a reckless or intentional conduct duty of care standard for those participants.

A proper balance of the relevant public policy considerations surrounding sports injuries arising from team contact sports also supports limiting the defendant's responsibility for injuries to other participants to injuries resulting from reckless or intentional conduct. The Appellate Court of Illinois in *Nabozny* v. *Barnhill*, 31 Ill. App. 3d 212, 334 N.E.2d 258 (1975),[10] was the first appellate court, of which we are aware, to address the issue that is before us today. In *Nabozny*, the court described the tension between two relevant public policy considerations as follows: "This court believes that

---

[10] The Illinois Supreme Court confirmed the Appellate Court's legal conclusion in *Nabozny* twenty years later in *Pfister* v. *Shusta*, 167 Ill. 2d 417, 425–26, 657 N.E.2d 1013 (1995) ("[t]he circuit court properly applied the contact sports exception bar to liability for injuries caused by the mere simple negligence alleged in the plaintiff's complaint").

the law should not place unreasonable burdens on the free and vigorous participation in sports by our youth. However, we also believe that organized, athletic competition does not exist in a vacuum. Rather, some of the restraints of civilization must accompany every athlete on to the playing field." Id., 215. The court thereafter concluded that a player was liable only for deliberate, wilful or reckless conduct. Id.

We too appreciate the tension between promoting vigorous athletic competition on the one hand and protecting those who participate on the other. As have most jurisdictions, we conclude that this balance is best achieved by allowing a participant in an athletic contest to maintain an action against a coparticipant only for reckless or intentional conduct and not for merely negligent conduct. We believe that participants in recreational sports will not alter their enthusiasm for competition or their participation in recreational activities for fear of liability for injuring someone because of their reckless or intentional conduct. We are convinced, however, that liability for simple negligence would have an opposite effect. We also are convinced that a recklessness standard will sufficiently protect participants in athletic contests by affording them a right of action against those who cause injuries not inherent in the particular game in which the participants are engaged. In other words, we believe that the reckless or intentional conduct standard of care will maintain civility and relative safety in team sports without dampening the competitive spirit of the participants.

A final public policy concern that influences our decision is our desire to stem the possible flood of litigation that might result from adopting simple negligence as the standard of care to be utilized in athletic contests. If simple negligence were adopted as the standard of care, every punter with whom contact is made, every midfielder high sticked, every basketball player fouled,

every batter struck by a pitch, and every hockey player tripped would have the ingredients for a lawsuit if injury resulted. When the number of athletic events taking place in Connecticut over the course of a year is considered, there exists the potential for a surfeit of lawsuits when it becomes known that simple negligence, based on an inadvertent violation of a contest rule, will suffice as a ground for recovery for an athletic injury. This should not be encouraged.

The majority of jurisdictions addressing this issue has chosen to adopt either a reckless or an intentional conduct standard of care when determining liability for injuries that occur during an athletic contest. *Nabozny* v. *Barnhill*, supra, 31 Ill. App. 3d 212, also involved an injury received during a soccer game. The plaintiff was a goalie on one team and had fielded the ball within the penalty area surrounding his goal. The ball had been passed to the plaintiff by a teammate who was closely pursued by the defendant, an opponent. The defendant did not turn away after the plaintiff had fielded the ball, but continued to run toward him and subsequently kicked the plaintiff, causing injury. The court concluded that "a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury." Id., 215.[11]

---

[11] See also *Hackbart* v. *Cincinnati Bengals, Inc.*, 601 F.2d 516, 524 (10th Cir. 1979) ("recklessness is the appropriate standard"); *Pfister* v. *Shusta*, 167 Ill. 2d 417, 425–26, 657 N.E.2d 1013 (1995) ("[t]he circuit court properly applied the contact sports exception bar to liability for injuries caused by the mere simple negligence alleged in the plaintiff's complaint"); *Hoke* v. *Cullinan*, 914 S.W.2d 335, 339 (Ky. 1996) ("[n]ot until a participant's conduct reaches a level of recklessness should civil liability attach"); *Ross* v. *Clouser*, 637 S.W.2d 11, 13–14 (Mo. 1982) (en banc) ("a cause of action for personal injuries incurred during athletic competition must be predicated on recklessness, not mere negligence"); *Dotzler* v. *Tuttle*, 234 Neb. 176, 183, 449 N.W.2d 774 (1990) ("a participant in a game involving a contact sport such as

In *Crawn* v. *Campo*, 136 N.J. 494, 496, 643 A.2d 600 (1994), the "[p]laintiff was playing catcher in a pickup softball game and was injured when [the] defendant, attempting to score from second base, either slid or ran into him at home plate." In rejecting the negligence standard, the court concluded: "One might well conclude that something is terribly wrong with a society in which the most commonly-accepted aspects of play—a traditional source of a community's conviviality and cohesion—spurs litigation. The heightened recklessness standard recognizes a commonsense distinction between excessively harmful conduct and the more routine rough-and-tumble of sports that should occur freely on the playing fields and should not be second-guessed in courtrooms." Id., 508.

Finally, we address the plaintiff's contention that in *Walsh* v. *Machlin*, supra, 128 Conn. 412, we imposed the negligence standard as the appropriate standard to be used for injuries occurring during athletic contests. *Walsh* is, however, distinguishable.

In *Walsh*, both the plaintiff's and the defendant's golf balls were roughly one hundred feet from the green. "Standing by the defendant's ball, the plaintiff and [the]

basketball is liable for injuries in a tort action only if his or her conduct is such that it is either willful or with a reckless disregard for the safety of the other player"); *Crawn* v. *Campo*, 136 N.J. 494, 497, 643 A.2d 600 (1994) ("the duty of care applicable to participants in informal recreational sports is to avoid the infliction of injury caused by reckless or intentional conduct"); *Turcotte* v. *Fell*, 68 N.Y.2d 432, 441, 502 N.E.2d 964, 510 N.Y.S.2d 49 (1986) ("[a] professional clearly understands the usual incidents of competition resulting from carelessness, particularly those which result from the customarily accepted method of playing the sport, and accepts them. They are within the known, apparent and foreseeable dangers of the sport and not actionable . . . ."); *Thompson* v. *McNeill*, 53 Ohio St. 3d 102, 103, 559 N.E.2d 705 (1990) ("between participants in such sporting events, only injuries caused by intentional conduct, or in some instances reckless misconduct, may give rise to a cause of action"); *Marchetti* v. *Kalish*, 53 Ohio St. 3d 95, 99–100, 559 N.E.2d 699 (1990) ("before a party may proceed with a cause of action involving injury resulting from a recreational or sports activity, reckless or intentional conduct must exist").

defendant discussed the club the defendant should use and the defendant selected his mashie niblick.[12] The plaintiff, seeing the defendant about to prepare to take his shot, said, 'Now put it on the green,' and walked away at almost right angles to the direct and intended line of flight from the ball to the green. Without calling 'Fore,' the defendant swung at his ball, shanked it so that it was deflected at almost a ninety degree angle to the right and hit the plaintiff in the eye as he turned to look back over his left shoulder just as he had reached his ball, causing him serious injury." Id., 413.

Our conclusion herein does not conflict with *Walsh* because, initially, we decide the standard to be applied to only those injuries occurring during team athletic contests involving contact as part of the game. Golf, generally, is neither a team sport in the true sense nor a sport where contact with other participants is a part of the game. Further, the normal expectations of participants in a golf match are far different from those inherent in soccer, and therefore a different standard of care may be appropriate. We, therefore, leave the question of what standard of care might be applicable in other factual circumstances for another day.

Applying the foregoing considerations to the facts before us, we conclude that, as a matter of policy, it is appropriate to adopt a standard of care imposing on the defendant, a participant in a team contact sport, a legal duty to refrain from reckless or intentional conduct. Proof of mere negligence is insufficient to create liability.

The judgment is reversed in part and the case is remanded with direction to strike the first count of the plaintiff's complaint.

In this opinion the other justices concurred.

---

[12] Mashie niblick: "[A]n iron golf club with a loft between those of a mashie and a niblick—called also number six iron." Webster's Third New International Dictionary.