### SALLY A. ALLEN *v.* JESSICA COX ET AL.
### (SC 17763)

Rogers, C. J., and Norcott, Katz, Zarella and Schaller, Js.

Argued October 17, 2007—officially released February 26, 2008

*William F. Gallagher*, with whom, on the brief, were *Garrett M. Moore* and *Joseph D. Foti*, for the appellant (plaintiff).

*Frank H. Santoro*, with whom were *Laura E. Waltman* and, on the brief, *Julia B. Morris*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Sally A. Allen, brought this action against the defendants, Jessica Cox and Dan-

iel Cox,[1] alleging that she was injured by the defendants' cat after the defendants negligently allowed the cat to roam free. The trial court rendered summary judgment for the defendants on the ground that there was no genuine issue of material fact as to whether the defendants had notice of their cat's vicious or mischievous propensities giving rise to a duty of care to prevent the cat from injuring the plaintiff. The plaintiff then brought this appeal from the trial court's judgment.[2] We reverse the judgment of the trial court.

The record reveals the following relevant facts, none of which are in dispute.[3] The plaintiff resides at 14 Lois Street in Bristol and the defendants reside approximately three blocks away. Both the plaintiff and the defendants are cat owners. On a number of occasions during August and September, 2004, the plaintiff saw the defendants' cat in her backyard and on her porch. In her deposition testimony, the plaintiff described the defendants' cat as dirty, scruffy looking, ragged and in apparent pain. Cox testified at her deposition that her cat had not been neutered. Linda DelFino, a neighbor of both the plaintiff's and the defendants', submitted an affidavit in which she stated that Cox had told her that she "could not control [her cat] because he would 'destroy' her kitchen curtains and house to get outside [and] she would let him out and leave the problem cat for everyone else to deal with." DelFino also stated that Cox had told her that Cox's neighbors kept their cats inside to avoid fights with the defendants' cat and that,

---

[1] Unless otherwise noted, all references in this opinion to Cox are to Jessica Cox and references to the defendants are to both Jessica Cox and David Cox.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Indeed, the defendants, who contend that the only issues presented in this case are questions of law, explicitly state in their brief that they adopt the plaintiff's statement of the facts.

if the defendants' cat started a fight with one of Del-Fino's cats, DelFino should stomp her feet. DelFino testified at her deposition that the defendants' cat was covered with scars from fights and that she could not "even give you a figure on how many times I broke up fights, because [the defendants' cat] fought with . . . any cat that . . . came in the yard . . . ."

At some point in September, 2004, the plaintiff, Del-Fino and Cox were talking outside the plaintiff's house. The plaintiff's cat also was outside at that time. The plaintiff testified at her deposition that the defendants' cat was in the area and, "when [he] saw [Cox], he came over. And [the two cats] swatted, hissed at each other and then my cat took off . . . ." Cox testified that she also had observed the fight between the two cats.

On the morning of March 20, 2005, the plaintiff let her cat out of her house at 6:30 a.m. About one hour later, she heard two cats fighting. When she opened her front door, she saw her cat fighting with the defendants' cat. The plaintiff yelled at her cat, who immediately broke away. The plaintiff then quickly opened her front door, picked up her cat, threw him inside the house and closed the door. Almost immediately thereafter, the defendants' cat leapt to the plaintiff's right forearm and hung onto it. Screaming in pain, the plaintiff tried to remove the cat from her right arm with her left hand. The cat then bit that hand. It is undisputed that this was the first time that the defendants' cat had attacked a person.

Thereafter, the plaintiff brought this action against the defendants alleging that she had been injured as the result of the defendants' negligence in allowing their cat to roam free. The defendants moved for summary judgment on the ground that there was no genuine issue of material fact as to whether they owed the plaintiff a duty of care because they did not know that their cat

was of a vicious or mischievous disposition and hence liable to attack people. In support of this proposition, the defendants relied on our decision in *Pallman* v. *Great Atlantic & Pacific Tea Co.*, 117 Conn. 667, 668, 167 A. 733 (1933) ("[t]he defendant in any event would not be liable unless it knew or should have known that the cat was of a vicious or mischievous disposition and hence liable to attack people"). The defendants argued that a duty of care arises only when the defendant knew or had reason to know of the animal's vicious propensities and, even then, the vicious propensity had to be of the same kind that gave rise to the plaintiff's claim. See W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 76, p. 542. The defendants further argued that, under this rule, a duty of care would arise only if they knew or had reason to know that their cat previously had attacked a person.

In opposition to the defendants' motion for summary judgment, the plaintiff argued that a genuine issue of material fact existed as to whether the defendants knew or should have known of their cat's aggressive propensities. According to the plaintiff, the aggressive behavior of the defendants' cat toward other cats, the defendants' knowledge of this aggressive behavior, their admitted inability to control their cat within their own home, their knowledge that their cat was not neutered and, thus, was more likely to be aggressive, and their instructions to DelFino as to how to control their cat in the event of a fight between their cat and another cat, sufficiently raised a genuine issue of material fact as to whether the defendants knew of their cat's vicious or mischievous propensities and whether the plaintiff's injuries were foreseeable.

In its memorandum of decision, the trial court granted the defendants' motion for summary judgment on the ground that no genuine issue of material fact existed as to whether the defendants' cat had displayed

any vicious or mischievous tendencies *toward people.* The trial court concluded that because the defendants' cat previously had not attacked *a person,* the plaintiff's injuries were not foreseeable, and the defendants owed no duty of care to the plaintiff. In support of this conclusion, the trial court quoted *Murphy* v. *Eddinger,* Superior Court, judicial district of Middlesex at Middletown, Docket No. CV-98-0086973 (November 30, 1999) (26 Conn. L. Rptr. 8, 10) for the proposition that the owner's duty of care "arises only when the individual exercising control over the animal knew or had reason to know (i.e., scienter) of the animal's vicious propensities and, even then, the vicious propensity had to be of the same kind that gave rise to the plaintiff's claim. W. Prosser & W. Keeton, [supra, § 76, p. 542]." (Internal quotation marks omitted.) The trial court also relied on *Harris* v. *O'Higgins,* 2000 Mass. App. Div. 79 (2000), in which the Appellate Division of the Massachusetts District Court stated that "there is nothing in the record or ordinary experience to suggest that an outdoor cat's encounters with dogs or occasional fights with other cats are in any way indicative of a dangerous propensity to attack humans without provocation." Id., 81. Relying on *Murphy* and *Harris,* the trial court concluded that "[i]n the current situation the [plaintiff] has introduced evidence that [the defendants' cat] has vicious propensities towards other felines; however, no evidence has been submitted indicating that [the cat] has displayed vicious tendencies towards human beings." This appeal followed.

On appeal, the plaintiff claims that the trial court improperly concluded that, to establish a prima facie case that the plaintiff's injuries were foreseeable and that the defendants, therefore, had a duty of care to the plaintiff, the plaintiff was required to present evidence that the defendants' cat had a known history of vicious propensities toward people. The plaintiff con-

tends that the defendants' knowledge of their cat's vicious propensity toward other animals was sufficient to render her injuries foreseeable. We disagree with the plaintiff that knowledge of the cat's vicious propensities is, in and of itself, sufficient, but we agree with the plaintiff that, under the specific circumstances of this case, there was a genuine issue of material fact as to whether the defendants knew or should have known that their cat's vicious or mischievous propensities could lead it to injure a person.

We begin our analysis with the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.)

*Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 571, 717 A.2d 215 (1998); *Jaworski* v. *Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997), quoting 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, p. 25-7. The determination of whether a duty exists is a question of law. *Jaworski* v. *Kiernan*, supra, 405. "Although it has been said that no universal test for [duty] ever has been formulated; W. Prosser & W. Keeton, [supra] § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Internal quotation marks omitted.) *Jaworski* v. *Kiernan*, supra, 405; *Frankovitch* v. *Burton*, 185 Conn. 14, 20–21, 440 A.2d 254 (1981).

This court previously has recognized that there are circumstances under which a cat owner has a duty of care to prevent personal injuries from a cat attack. In *Bischoff* v. *Cheney*, 89 Conn. 1, 92 A. 660 (1914), the plaintiff was bitten by the defendant's cat. The plaintiff then filed a complaint in which she raised two theories of liability. Id., 2. First, she claimed that, because the cat possessed vicious propensities of which the defendant had knowledge, the defendant was liable for her injuries regardless of whether he had been negligent in failing to restrain the cat. Id. She also alleged in the alternative that, regardless of whether the cat had vicious propensities, the defendant was liable because he negligently had allowed the cat to roam free. Id. The

trial court refused to instruct the jury on the second theory of liability, and the jury rendered a verdict in favor of the defendant. Id. The plaintiff then appealed from the judgment, challenging the trial court's failure to instruct the jury. Id., 6.

On appeal, we concluded that the trial court properly had refused to instruct the jury that allowing the cat to roam free constituted negligence, regardless of whether the cat had known vicious tendencies. Id., 5–6. We stated that "[t]he cat's disposition is kindly and docile, and by nature it is one of the most tame and harmless of all domestic animals." Id., 5. Accordingly, "no negligence can be attributed to the mere trespass of a cat . . . since an owner cannot be compelled to anticipate and guard against the unknown and unusual." Id. We concluded that the owner could be held liable only "[i]f . . . the cat be . . . of a mischievous or vicious disposition, or its owner knows this propensity, and then permits the cat to go at large or trespass . . . ." Id. We therefore affirmed the judgment of the trial court. Id., 7.

In *Pallman* v. *Great Atlantic & Pacific Tea Co.*, supra, 117 Conn. 667–68, the plaintiff "brought [an] action to recover damages for an attack alleged to have been made upon her by a cat in a store owned and operated by the defendant." The plaintiff presented evidence that the defendant's employee had stated that the defendant intended to dispose of the cat, and appears to have claimed that this evidence supported an inference that the cat was dangerous. Id., 668. The trial court directed a verdict for the defendant. Id. On appeal, we affirmed the judgment. We cited *Bischoff* for the proposition that "[t]he defendant in any event would not be liable unless it knew or should have known that the cat was of a vicious or mischievous disposition and hence liable to attack people." Id. We then stated: "[t]he record is barren of any evidence tending to prove that the cat had, to the knowledge of the defendant or any of its servants

or agents, ever before attacked any person *or in any way displayed a vicious or mischievous disposition.*" (Emphasis added.) Id.

In the present case, the plaintiff relies on both *Bischoff* and *Pallman* in support of her claim that she was not required to present evidence that the defendants' cat had a history of vicious or mischievous behavior *toward people,* but that evidence of such behavior toward other cats was sufficient to establish that her injuries were foreseeable. Upon a close reading of those cases, however, we conclude that neither supports the plaintiff's claim. In *Bischoff,* we stated that the plaintiff must present evidence that the cat had "a mischievous or vicious disposition"; *Bischoff* v. *Cheney,* supra, 89 Conn. 5; but we did not specify whether this dangerous disposition must be displayed toward people or whether aggression toward other animals would suffice.[4] In *Pallman,* we stated that the defendant could not be held liable "unless it knew or should have known that the cat was of a vicious or mischievous disposition and *hence* liable to attack people." (Emphasis added.) *Pallman* v. *Great Atlantic & Pacific Tea Co.,* supra, 117 Conn. 668. We recognize that this language, although somewhat ambiguous, could be read as suggesting that evidence of a generally vicious or mischievous disposition might be sufficient to render an attack on a person foreseeable. That issue, however, was not before us in *Pallman.* Indeed, we concluded in that case that the plaintiff could not prevail because there had been no evidence that the cat had *any* vicious or mischievous tendencies. Id. Because our statement in *Pallman* was both ambiguous and dicta, it is of little instructive value in the present case.

---

[4] We also noted in *Bischoff* that the plaintiff had presented evidence that the "[defendant] had knowledge of the vicious propensity of the cat to bite," but did not indicate *what* the cat had a propensity to bite. *Bischoff* v. *Cheney,* supra, 89 Conn. 3.

Because neither *Bischoff* nor *Pallman* answers the question before us, we turn to other jurisdictions as well as the Restatement (Second) of Torts for guidance. There is a split in authority among other jurisdictions that have considered the issue of whether a plaintiff must present evidence that the cat had a history of aggression toward other people to establish the existence of a duty of care to prevent personal injuries from a cat attack. The cases relied on by the plaintiff are fairly represented by the Michigan Appellate Court's decision in *Rickrode* v. *Wistinghausen*, 128 Mich. App. 240, 340 N.W.2d 83 (1983), leave to appeal denied, 418 Mich. 962 (1984).[5] In *Rickrode*, the plaintiff alleged that the defendant was responsible for injuries and damages suffered when the defendant's cat jumped on her daughter and scratched her. Id., 243. The plaintiff alleged that the defendant knew or should have known of the cat's violent propensities. Id. In support of this claim, the plaintiff relied on the testimony of the defendant that she had knowledge of a previous attack on another child. Id. In response, the defendant claimed that the cat had been provoked. Id. The trial court concluded that the plaintiff had failed to establish that the defendant knew of the cat's vicious propensities and directed a verdict for the defendant. Id., 244. On appeal, the Michigan Court of Appeals concluded that whether the plaintiff had established the defendant's knowledge was a question of fact for the jury to resolve and, accordingly, reversed the judgment. Id. In reaching this conclusion, the court stated that "[a] plaintiff need not prove

---

[5] The plaintiff also relies on *Miller* v. *Baylor*, 1986 WL 4627, *3 (Ohio App., April 14, 1986) (evidence of prior hissing and growling was sufficient to demonstrate foreseeability of injuries); *Allen ex rel. B.A.* v. *Albin*, 97 S.W.3d 655, 664 (Tex. App. 2002) (defendant's admissions that dog was " 'ferocious,'' " 'mean,' " and " 'bad,' " had knocked him down on previous occasions and did not like children was sufficient to demonstrate foreseeability); and *Gardner* v. *H.C. Bohack Co.*, 179 App. Div. 242, 242–43, 166 N.Y.S. 476 (1917) (notice of vicious propensities need not be based solely on attack on human being).

that the owner. . . knew that his or her [cat] had already attacked human beings when unprovoked to [demonstrate knowledge]. Rather, [the] plaintiff need only present proof that the owner knew or had reason to know that the animal had a dangerous tendency that is unusual and not necessary for the purposes for which such an animal is usually kept. . . . It is enough for [the] plaintiff to prove that the [cat] has exhibited a tendency to attack human beings *or other animals* such that the owner would be apprised of the [cat's] dangerous character. Sufficient as well is evidence that the [cat] has exhibited any form of ill temper in the presence of human beings that would apprise a reasonable owner that the animal would attack if left uncontrolled." (Citation omitted; emphasis added.) Id., 245–46.

The defendants rely primarily on *Harris* v. *O'Higgins,* supra, 2000 Mass. App. Div. 80, in which the plaintiff alleged that the defendant was negligent because he knew, or should have known, of the vicious propensities of his cat and failed to properly supervise, contain and control his cat. After extensive discovery, the defendant in *Harris* moved for summary judgment. Id. He filed an affidavit in support of his motion, in which he stated that prior to the alleged incident with the plaintiff, his cat never had injured, attacked, displayed anger or demonstrated any vicious tendencies toward anyone. Id. The defendant also asserted that no one had ever complained about the cat to him or to anyone in his family. Id. The defendant offered portions of the plaintiff's own deposition in which she specifically testified that she had "never complained about the cat; had neither personal knowledge, nor was aware from any source, that anyone else had ever complained or been attacked; did not, in fact, know if the cat had a vicious nature; and was never informed by the defendant, his family or anyone else that it did." (Internal quotation marks omitted.) Id.

The plaintiff in *Harris* supported her opposition to the defendant's motion with her own affidavit and that of a friend. Id. Despite the plaintiff's deposition testimony that she was unaware of any prior incidents involving the defendant's cat, the plaintiff's friend asserted that the cat previously had "jumped on him" and had "exhibited a vicious nature." Id. The plaintiff's affidavit characterized her previous deposition testimony, relied on by the defendant, as erroneous. Id. The trial court subsequently rendered judgment in favor of the defendant. Id. On appeal, the Appellate Division of the Massachusetts District Court stated that "the plaintiff could not recover unless there was evidence warranting a finding that the cat was vicious to the knowledge of the defendant, and that her injury followed as the natural and probable consequence of the defendant's wrong in keeping such an animal." Id., 80–81. The court then concluded that the plaintiff had "failed to advance a scintilla of competent evidence that [the defendant's cat] had vicious propensities of which the defendant should have been aware"; id., 81; and affirmed the judgment of the trial court. Id., 83.

Although our sibling states appear to disagree as to the specific behavior that is sufficient to establish the foreseeability of an attack by a cat on a person, they all agree that the foreseeability of such an attack is a fact-bound question involving a determination of the cat's previous behavior, the owner's knowledge of that behavior, the circumstances that gave rise to the harm, and the actual harm inflicted. This methodology is consistent with that adopted by the Restatement (Second) of Torts. See 3 Restatement (Second), Torts § 509, comment (i) (1997); see also 2 D. Dobbs, Torts (2001) § 344, pp. 946–47; 3 F. Harper, F. James & O. Gray, Torts (3d. Ed. 2007) § 14.11, pp. 308–11; W. Prosser & W. Keeton, supra, § 76, pp. 542–43.

Section 509 of the Restatement (Second) of Torts provides: "(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.

"(2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know." 3 Restatement (Second), supra, § 509.[6] The commentary to § 509 provides, consistent with the negligence standard that we adopted in *Bischoff*, that liability under the section "extends only to such harm as results from the abnormally dangerous propensity of the animal, of which the possessor knows or has reason to know." Id., comment (i), p. 18. The commentary further provides that "[k]nowledge, or reason to know, that an animal has a tendency to attack or fight with other animals is *not necessarily* knowledge or reason to know that it will attack human beings. If the possessor knows that his dog has the playful habit of jumping up on visitors, he will be liable . . . when the dog jumps on a visitor, knocks him down and breaks his hip; but he is not necessarily liable when the dog unexpectedly bites a postman, when he never has shown any inclination to do so before. Knowledge of one propensity may under particular circumstances give reason to know that the animal is likely to do something reasonably similar, even though he has not yet done it." (Emphasis added.) Id., comment (i), p. 19.

---

[6] We recognize that this section imposes strict liability for harms done by an abnormally dangerous animal, while this court concluded in *Bischoff* that attacks by even abnormally dangerous cats are subject to a negligence standard. *Bischoff* v. *Cheney*, supra, 89 Conn. 4. Nevertheless, § 509 of the Restatement (Second) of Torts and its commentary are instructive regarding the type of behavior that has been found to put an owner on notice that a cat is likely to be dangerous to persons.

Thus, the Restatement (Second) focuses on whether the harm was likely to result from a known behavior or propensity of the animal, and not on whether the particular type of harm previously had occurred. Although the Restatement (Second) states that knowledge of a tendency to attack other animals does not *necessarily* imply knowledge of a likelihood of harm to persons, it does not rule out such a conclusion if the harm to the person foreseeably results from a known behavior.

We find this reasoning persuasive and consistent with our previous case law. Accordingly, we conclude that when a cat has a propensity to attack other cats, knowledge of that propensity may render the owner liable for injuries to people that *foreseeably* result from such behavior.[7] See *Perodeau* v. *Hartford*, 259 Conn. 729, 754, 792 A.2d 752 (2002) ("[t]he ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised" [internal quotation marks omitted]); *Purzycki* v. *Fairfield*, 244 Conn. 101, 108 n.5, 708 A.2d 937 (1998) (same). We further conclude that it is reasonably foreseeable that a person would attempt to protect his own cat from an attack by an abnormally aggressive cat and that the person could be injured by the abnormally aggressive cat, thereby giving rise to a duty of care to prevent such injuries.

The plaintiff in this case presented evidence that the defendants' cat previously had attacked cats and that she was injured while trying to protect her cat from an attack by the defendants' cat. Accordingly, viewing this evidence in the light most favorable to the plaintiff, we conclude that a genuine issue of material fact exists as to whether the plaintiff's injuries were foreseeable.

---

[7] Our conclusion is not inconsistent with the cases relied on by the defendants because none of those cases involved injuries incurred as the result of a cat attacking another animal.

The judgment is reversed and the case is remanded to the trial court with direction to deny the defendants' motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.