Kevin TRUJILLO, Plaintiff,

v.

Philip YEAGER a/k/a Phil Yeager,
et al., Defendants.

Civil Action No. 08–cv–1483 (JCH).

United States District Court,
D. Connecticut.

May 19, 2009.

Peter Adlai Berdon, Berdon, Young & Margolis, New Haven, CT, for Plaintiff.

Brian J. Farrell, Jr., Law Offices of Brian J. Farrell, Jr., New Haven, CT, James M. Sconzo, Michael G. Petrie, Jorden Burt, Simsbury, CT, for Defendants.

**RULING RE: DEFENDANT YEAGER'S MOTION TO DISMISS (DOC. NO. 30) AND DEFENDANTS PILGER AND TRINITY COLLEGE'S MOTION TO DISMISS (DOC. NO. 16)**

JANET C. HALL, District Judge.

Plaintiff Kevin Trujillo brings this action against defendants Philip Yeager a/k/a Phil Yeager, Trinity College, and Michael Pilger.[1] Trujillo alleges that he was severely injured during an NCAA Division III men's varsity soccer match between his team, Coast Guard Academy, and Trinity College. He alleges that Yeager, acting with negligence and recklessness, caused him severe injury during the course of the game. He alleges that Pilger, Yeager's coach, and Trinity College, where Yeager

---

1. The court's docket includes three other defendants: James F. Jones, Jr., Paula Russo, and Scott Reynolds. These parties are not named in the complaint, and the plaintiff agrees that they should not be listed as defen-dants in this case. *See* Pl.'s Opp'n (Doc. No. 24) at 1, 3. Accordingly, the clerk is directed to terminate defendants Jones, Russo, and Reynolds.

was a student and Pilger was employed, acted with negligence in failing to train or educate Yeager and in allowing an inadequately trained and educated player to participate in the match when defendants reasonably should have known that injury to other players would result. Pending before the court is defendant Yeager's Motion to Dismiss Count One, and defendants Pilger and Trinity College's Motion to Dismiss Count Three.[2]

## I. STANDARD OF REVIEW

In deciding a motion to dismiss, the court takes the allegations of the complaint as true, and construes them in a manner favorable to the pleader. *Hoover v. Ronwin*, 466 U.S. 558, 587, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint. *United States v. City of New York*, 359 F.3d 83, 87 (2d Cir.2004). Dismissal is warranted if the facts as alleged are insufficient to "raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007); *see also Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir.2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations. *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir.2006). Instead, plaintiffs are obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007).

## II. FACTUAL BACKGROUND

Plaintiff Trujillo was a cadet and varsity soccer player at the United States Coast Guard Academy in New London, Connecticut, and a citizen of California for the purposes of diversity jurisdiction. Defendant Yeager was a student and varsity soccer player at Trinity College in Hartford, Connecticut, and a citizen of Illinois for the purposes of diversity jurisdiction. Defendant Pilger is the coach of the Trinity College men's varsity soccer team. Defendant Trinity College is a private educational institution with a NCAA Division III men's varsity soccer team. Both Pilger and Trinity College are citizens of Connecticut.

On or about September 12, 2006, Trujillo and Yeager were playing in a soccer match between the Coast Guard Academy and Trinity College. During the game, Trujillo was struck in the head by Yeager. According to Trujillo's allegations, Yeager was careless and negligent, as well as reckless, in using force against Trujillo. Trujillo also alleges that Trinity College and Pilger were negligent in failing to properly train and educate Yeager, and in allowing an inadequately trained and educated player to participate in the soccer match when they knew or reasonably should have known that injury to other players would result.

As a result of defendants' negligence, and defendant Yeager's recklessness, Trujillo suffered serious and debilitating injuries, some or all of which may be permanent. Trujillo has incurred medical expenses and may incur similar expenditures in the future. Trujillo has suffered lost wages and an impairment of his ability to earn income.

2. Both counts at issue in this Motion involve alleged negligence. Plaintiff's allegation of recklessness on the part of defendant Yeager (Count Two) is not at issue in this Motion.

## III. DISCUSSION

### A. *Yeager's Motion to Dismiss Count One*

■ Yeager has moved to dismiss Count One on the grounds that he cannot be held liable in negligence for injuries caused in the course of a competitive contact sport. Yeager relies on the Connecticut Supreme Court's decision in *Jaworski v. Kiernan*, 241 Conn. 399, 696 A.2d 332 (1997). Trujillo has not filed an opposition to Yeager's Motion.

In *Jaworski*, the Connecticut Supreme Court analyzed the duty owed among adult coparticipants in team contact sports. *Id.* *Jaworski*, like the instant case, involved an adult soccer match. In analyzing the facts of that case, the court engaged in an extensive policy discussion about the tension between promoting vigorous athletic competition and protecting those who participate. It noted that the vast majority of states have adopted an intentional or reckless standard of care for injuries occurring during athletic contests. *Id.* at 410, 696 A.2d 332. Ultimately, the court concluded that "a participant in an athletic contest [may] ... maintain an action against a coparticipant only for reckless or intentional conduct and not for merely negligent conduct." *Id.* at 409, 696 A.2d 332.

Trujillo's Count One is a negligence count against Yeager, Trujillo's coparticipant in the adult soccer match. *Jaworski* squarely forecloses Trujillo's ability to recover from Yeager merely upon proof of negligence. *Id.* at 412, 696 A.2d 332. Accordingly, Yeager's Motion to Dismiss (Doc. No. 30) is GRANTED, and Count One, Trujillo's negligence count against Yeager, is DISMISSED.

### B. *Pilger and Trinity College's Motion to Dismiss Count Three*

■ Defendants Pilger and Trinity College (hereinafter "the Trinity defendants") have moved to dismiss Count Three on the grounds that they cannot be held liable in negligence for injuries sustained by Trujillo. The Trinity defendants acknowledge that Connecticut courts have not explicitly addressed the issue of whether a negligence cause of action is available to injured players against non-participants such as coaches, but contend that *Jaworski*'s reasoning and logic is equally applicable to claims against non-participants. They also rely upon cases from other jurisdictions, particularly the Massachusetts case of *Kavanagh v. Trustees of Boston University*, 440 Mass. 195, 795 N.E.2d 1170 (2003), which have held that a plaintiff injured while playing a competitive contact sport must allege reckless or intentional conduct to hold a non-participant defendant liable. The facts of *Kavanagh* are quite similar to this case. In *Kavanagh*, the plaintiff alleged that the university and its coach were negligent in not taking steps to prevent the plaintiff from being punched by an opposing player during a scuffle during an intercollegiate basketball game.[3] *Id.* at 195–96, 795 N.E.2d 1170.

In response, Trujillo relies chiefly upon *Stewart v. Federated Department Stores, Inc.*, 234 Conn. 597, 662 A.2d 753 (1995). In *Stewart*, the Connecticut Supreme Court reaffirmed its earlier adoption of the standard contained in section 442B of the Restatement (Second) of Torts, which provides that:

Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial fac-

---

**3.** The plaintiff in *Kavanagh* also alleged that the university was vicariously liable for the behavior of "scholarship athletes," a proposi- tion that the court rejected. *See* 440 Mass. at 200–01, 795 N.E.2d 1170.

tor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

Restatement (2d) of Torts § 442B; *Stewart*, 234 Conn. at 607–08, 662 A.2d 753. Trujillo contends that, under this rule, the coach may be held liable in negligence for Yeager's intentional act, provided that the injury is reasonably foreseeable in relation to the coach's conduct. That is, Trujillo contends that he need only adequately plead that Yeager's conduct was of the type that would naturally flow from a failure to properly train and supervise him.

Trujillo also seeks to distinguish *Kavanagh*. Trujillo notes that the assault in that case occurred outside the course of ordinary play, and that special training need not be provided to keep players from punching an opponent in a scuffle, because such behavior is obviously not permitted. He seeks to distinguish that assault from dangerous play within the course of the game, the avoidance of which may be aided by proper coaching. Second, and relatedly, Trujillo contends that criminal conduct in the course of collegiate basketball play (the punch) is not within the scope of foreseeability, as distinguished from the dangerous play resulting from the failure to train players to abide by the NCAA rules on safe play.

This court's task is to determine whether the Connecticut Supreme Court would extend *Jaworski* to encompass the facts of Trujillo's claims against the Trinity defendants. In doing so, this court must apply the standards set out in *Jaworski* itself for determining whether a duty arises in this situation.

In *Jaworski*, in analyzing duty, the Connecticut Supreme Court first conducted a threshold inquiry of whether the harm to the plaintiff was foreseeable. 241 Conn. at 405–07, 696 A.2d 332. Concluding that it was, the court then considered four factors in determining the extent of a co-participant's responsibility:

> (1) the normal expectations of participants in the sport in which the plaintiff and the defendant were engaged; (2) the public policy of encouraging continued vigorous participation in recreational sporting activities while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions.

*Id.* at 407, 696 A.2d 332.

This court, similarly, first turns to the foreseeability inquiry. Determining foreseeability requires analyzing whether "a reasonable person in the defendant's position, knowing what he knew or should have known, would have anticipated the harm that resulted from his actions." *Id.* at 406, 696 A.2d 332. Certainly the injury could have been anticipated. As *Jaworski* pointed out, "[s]occer ... is ... replete with occasions when the participants make contact with one another during the normal course of the game.... If a player seeks to challenge another player who has possession of the ball or seeks to prevent another player from gaining possession of the ball, the resulting contact could reasonably be foreseen to result in injury to either player." *Id.* at 406–07, 696 A.2d 332 (internal citation omitted). The instant case similarly involves an attempt by one player to prevent another player from gaining possession. Although the defendants in Count Three are a coach and college rather than the opposing player, a coach can reasonably foresee that negligent training of player might result in injuries of the type that occurred in this

case. On the facts pled, the court concludes that the injury was foreseeable.

As to the factors beyond the foreseeability inquiry, the Connecticut Supreme Court made clear in *Jaworski* that the normal and reasonable expectations of participants in contact team sports include the potential for injuries, that utilizing simple negligence as the standard of care for athletic contests would lead to a flood of undesirable litigation, and that a majority of other jurisdictions have adopted a reckless or negligence standard of care for athletic contests. It expressed its concern that liability for simple negligence would have the effect of dampening enthusiasm for competition or participation in sporting activities for fear of liability. Similar concerns are present in Count Three against the Trinity defendants. Trujillo, like the plaintiff in *Jaworski*, had a normal and reasonable expectation that injuries might occur. Holding coaches liable for negligence in training athletes under their care who recklessly or intentionally injure other individuals could dampen coaches' willingness to aggressively coach their athletes. At the level of organized, intercollegiate sports conducted under the auspices of the NCAA, a system of rules and discipline exists to control the behavior of coaches and players alike. To impose an overlay of liability in tort for simple negligence over this internal system of regulation would run the risk of undermining that system and creating the flood of unwarranted litigation that the Connecticut Supreme Court was eager to avoid.

Furthermore, as *Jaworski*'s fourth factor makes clear, the Connecticut Supreme Court has specifically looked in this context to the decisions of other jurisdictions. In other situations, as well, that court has looked to the decisions of the Massachusetts Supreme Judicial Court. Therefore, the Supreme Judicial Court's precedent in

*Kavanagh*, while not binding, is highly persuasive on how the Connecticut Supreme Court might rule on the issue of coaches' liability.

In *Kavanagh*, the court discussed the standard to be applied "to claims that coaches are liable for causing their players to injure other players." 440 Mass. at 204, 795 N.E.2d 1170. It explained that the court had previously held that a player's negligence did not suffice to impose liability for injuries the player inflicted during competition. *Id.* at 204–05, 795 N.E.2d 1170. The court noted that the requirement to show recklessness furthered a policy that "vigorous and active participation in sporting events should not be chilled by the threat of litigation." *Id.* at 205, 795 N.E.2d 1170. It then reasoned that for similar reasons, a similar standard should apply to coaches:

> Just as players are entitled to play aggressively without fear of liability, a coach properly may encourage players to play aggressively. Indeed, a coach's ability to inspire players to compete aggressively is one of a coach's important attributes. The mere possibility that some players might overreact to such inspiration or encouragement should not, by itself, suffice to impose liability on a coach. As we do with the players themselves, we must impose liability only where a coach's behavior amounts to at least recklessness.

*Id.* Trujillo has alleged that Pilger failed to properly train and educate Yeager, and that Pilger allowed Yeager, an inadequately trained and educated player, to participate in the soccer match. While not identical to an allegation that Pilger encouraged Yeager to play aggressively, the court finds Trujillo's efforts to distinguish *Kavanagh* unconvincing. Both the injuries in *Kavanagh* and in the instant case occurred at the hand of an opposing

player during the heat of the game, and in both cases, the injured parties sought to hold the coach of the opposing player and that coach's employer liable. Whether the injury was inflicted by an opposing player during an in-game fight "outside the course of ordinary play," as opposed to the negligent behavior of an opposing player during the heat of competition, holding coaches liable in negligence, particularly to players on a different college's team, would unreasonably threaten to chill competitive play. Moreover, as the *Kavanagh* court points out, "[u]nder the rules of any sport, fouls or other violations carry their own penalties, and it is up to the officials refereeing the competition to enforce those rules and impose those penalties." *Id.* at 205–06, 795 N.E.2d 1170. The obligation is not on the coaches. This is particularly true in the context of intercollegiate or professional competition, which employ a professional staff of referees, as compared with the recreational competition at issue in *Jaworski*.

Lastly, the court must address plaintiff's contention that the Connecticut Supreme Court would apply *Stewart* to find a cause of action in this case. This court concludes that, with regard to injuries sustained in athletic competition, the Connecticut Supreme Court would look to its precedent in *Jaworski* and the decisions of other states regarding injuries sustained in athletic contests, rather than applying the more generic Restatement standard.[4] Given that *Jaworski*, and the decisions of sister states, militate strongly against permitting negligence claims to redress injuries sustained by participants in adult contact sports, this court concludes that the Connecticut Supreme Court would find that the appropriate standard of care to be imposed on coaches for injuries caused by their players is one of reckless or intentional conduct.

As to Trinity College, Trujillo seeks to hold it liable as the employer of Pilger and for its own failure to train and educate Yeager. The allegations against Trinity College are identical to those against Pilger and fail for the same reasons. Because the college acts, in effect, through the coach in training or educating players, allowing negligence claims against colleges for a coach's failure to adequately train or educate a player would allow plaintiffs to evade the policy of not allowing negligence claims against coaches for injuries caused by their players. Accordingly, Pilger and Trinity College's Motion to Dismiss (Doc. No. 16) is GRANTED, and Count Three is DISMISSED.

**SO ORDERED.**

---

**4.** Even if the court were to conclude that *Stewart* applied to the instant case, it is distinguishable. In *Stewart,* the court found that "a jury reasonably could have concluded that the defendant had both actual and constructive notice that robbery and its associated violent consequences were likely to occur in its garage." 234 Conn. at 613, 662 A.2d 753. It based this finding on the conclusion that the robbery and murder of the plaintiff's decedent was "within the foreseeable scope of the risk because the prior robberies that occurred in the garage were crimes with a natural propensity to escalate into physical violence, including murder." 234 Conn. at 613, 662 A.2d 753. The court also pointed to the criminal statistics available to the defendant, its own employees' recommendations, and the past violent crimes that had occurred within the garage and its immediate vicinity. *Id.* In the instant case, by contrast, Trujillo has not alleged that any defendant was aware of any prior incidents in which Yeager had inflicted injuries to coparticipants in sporting events, or that one or more defendants otherwise had actual or constructive notice that Yeager might inflict such injuries.