[Cite as *Horvath v. Ish*, 194 Ohio App.3d 8. 2011-Ohio-2239.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
|  | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) |  |

HORVATH et al.,

     Appellants,

     v.

ISH et al.,

     Appellees.

C.A. No.     25442

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009 03 1831

DECISION AND JOURNAL ENTRY

Dated: May 11, 2011

James A. Sennett and Laura A. James, for appellants.

William M. Kovatch, for appellees.

---

BELFANCE, Judge.

{¶1}   Appellants, Angel and Eugene Horvath, appeal the summary judgment ruling granted in favor of appellees, David Ish and his parents, Annette and David Ish, by the Summit County Court of Common Pleas. We reverse.

BACKGROUND

{¶2}   On March 6, 2007, Angel Horvath was skiing at Boston Mills Ski Resort with her husband, Eugene Horvath. Fourteen-year-old David Ish was also at Boston Mills, snowboarding with his brother and cousins. While Angel was skiing down one of the hills at the resort, David cut across the hill from the snowboarding area. In doing so, he collided with Angel from behind. Angel suffered serious, permanent injuries as a result of the collision.

{¶3}   The Horvaths filed a complaint against David and his parents, alleging that David had acted negligently, carelessly, recklessly, willfully, and wantonly, causing him to collide with Angel.  The Horvaths also named Boston Mills Ski Resort, Inc., and Peak Resorts, Inc., in a subsequent amended complaint.  Boston Mills and Peak Resorts were dismissed after the trial court granted their motion for judgment on the pleadings.

{¶4}   On April 19, 2010, the Ishes filed a motion for summary judgment.  In support of the motion, the Ishes argued that Angel had assumed the risk of colliding with another skier, that the danger of such a collision was open and obvious, and that the Revised Code does not create a statutory duty between skiers.  The Horvaths opposed the motion, but the trial court granted the motion on May 18, 2010.

{¶5}   The Horvaths have appealed the trial court's decision, assigning two errors for our review.

STANDARD OF REVIEW

{¶6}   This court reviews a trial court's ruling on a motion for summary judgment de novo and applies the same standard as the trial court. *Chuparkoff v. Farmers Ins. of Columbus, Inc.*, 9th Dist. No. 22712, 2006-Ohio-3281, at ¶12.  Pursuant to Civ.R. 56(C), summary judgment is appropriate when "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448.

{¶7} The moving party has the burden of demonstrating that no genuine issues of material fact exist. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. Id. at 293. Pursuant to Civ.R. 56(E), the nonmoving party may not simply rest on the allegations of its pleadings; it must provide the court with evidentiary material, such as affidavits, written admissions, and/or answers to interrogatories, to demonstrate a genuine dispute of fact to be tried. See also *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735.

ASSIGNMENTS OF ERROR

Assignment of Error I

The Trial Court erred in granting summary judgment in favor of Appellees Ish when it concluded that Revised Code Chapter 4169 did not apply to causes of action between skiers.

{¶8} In their first assignment of error, the Horvaths argue that R.C. 4169.08(C) imposes duties upon skiers owed to other skiers and that David violated these duties, thereby making him liable to the Horvaths for the injuries caused to Angel. The Ishes counter that the statute does not impose duties between skiers; rather, the duties described in R.C. 4169.08 are owed by a skier to a ski-area operator.

{¶9} We begin by noting that even though David was snowboarding, he fits within the definition of "skier" provided by the statute. See R.C. 4169.01(A) ("'Skier' means any person who is using the facilities of a ski area * * * for the purpose of skiing, which includes, without limitation, sliding or jumping on snow or ice on skis, a snowboard, sled, tube, snowbike, toboggan, or any other device").

{¶10} R.C. 4169.08 is entitled "Skiing inherently hazardous; limitation of liability; duties of operator" and appears in the R.C. Chapter governing skiing safety. Subsection (A)

recognizes that skiing is an inherently dangerous activity and that a skier assumes the risk and liability of injury and damage that arises from the inherent dangers of skiing. R.C. 4169.08(A). The legislature has included a nonexhaustive list of some of the inherent risks associated with skiing; however, collisions with other skiers is not one of the risks specifically enumerated. See id. Further, R.C. 4169.08(A) relieves a ski-area operator from liability so long as the ski-area operator complies with applicable statutes. R.C. 4169.08(B) outlines the "legal responsibilities of a ski area operator to a skier." R.C. 4169.08(B). Finally, R.C. 4169.08(C) lists a skier's responsibilities:

> A skier shall have the following responsibilities:
>
> (1) To know the range of the skier's ability to negotiate any slope or trail or to use any passenger tramway that is associated with a slope or trail, to ski within the limits of the skier's ability, to ski only on designated slopes and trails, to maintain control of speed and course at all times while skiing, to heed all posted warnings, and to not cross the track of a passenger tramway except at a designated area;
>
> (2) To refrain from acting in a manner that may cause or contribute to the injury of another person, to refrain from causing collision with any person or object while skiing, and to not place any object in a ski area that may cause another skier or a passenger to fall.

In addition, R.C. 4169.09 states that "[a] * * * skier is liable for injury, death, or loss to person or property caused by the * * * skier's failure to fulfill any of the responsibilities required by this chapter."

{¶11} No Ohio courts have interpreted the above statutes as creating a statutory cause of action between skiers. Nor have any courts in this state held that the responsibilities enumerated in R.C. 4169.08(C) are owed to ski-area operators but not to skiers, as the Ishes have suggested. Thus, the interpretation of this statute is a matter of first impression. If the language of the statute is unambiguous, we must apply the clear meaning of the words used according to the rules of grammar and common usage. *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St.3d

125, 127; R.C. 1.42. If, however, the language is ambiguous, susceptible of more than one reasonable interpretation, we may interpret the meaning of the statute. *State v. Myers*, 9th Dist. Nos. 3260-M and 3261-M, 2002-Ohio-3195, at ¶15.

{¶12} Here, the trial court found that based on the language of the statute, R.C. 4169.08 was inapplicable to collisions between skiers. In examining the plain language of the statute, we find that the trial court erred in its determination.

{¶13} R.C. 4169.08 begins by identifying the risks of skiing that a skier expressly assumes. A collision with another skier is not a risk that the legislature chose to specifically identify. R.C. 4169.08(A)(1). Next, the section describes situations in which a ski-area operator is not liable for property loss, injury, or death and outlines the legal responsibilities of the operator to the skier. See R.C. 4169.08(A)(2), (3), and (B)(1) through (5). In light of the language used, these portions of the statute are intended to protect the ski-area operator from liability. See generally *Otterbacher v. Brandywine Ski Ctr., Inc.* (May 23, 1990), 9th Dist. No. 14269, at *4. Finally, R.C. 4169.08(C) defines the responsibilities of a skier. It requires a skier "to maintain control of speed and course at all times," "[t]o refrain from acting in a manner that may cause or contribute to the injury of another person, [and] to refrain from causing collision with any person." R.C. 4169.08(C)(1) and (2). Although the statute does not specifically state to whom these responsibilities are owed, a logical conclusion to be drawn from the plain language of the statute would be that if the skier has a duty to refrain from colliding with another person, that duty would be owed to that other person; thus, in this case, David owed a duty to Angel and to any other person he would encounter while skiing to refrain from colliding with the other person. This conclusion is further supported by the next section of the statute, which directly states that "[a] * * * skier is liable for injury, death, or loss to person or property caused by the *

* * skier's failure to fulfill any of the responsibilities required by this chapter." R.C. 4169.09. By reading R.C. 4169.08(C) in conjunction with R.C. 4169.09, we find that it is evident that the legislature intended that skiers would be liable for injuries caused to others while skiing. Thus, the statutes apply to accidents between skiers.

{¶14} In the trial court, the parties' primary focus was whether R.C. Chapter 4169 was applicable to accidents between skiers. In conjunction with the Horvaths' argument that the statutes applied, they argued that a skier's violation of his statutory duties led to a finding of negligence per se. Because the trial court found that a skier's statutory duties were not owed to other skiers, the court did not reach the question of whether David violated any of the responsibilities described in R.C. 4169.08(C) and, if so, whether any such violation invoked the doctrine of negligence per se. See, e.g., *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, paragraphs two and three of the syllabus; *Butler v. Rejon* (Feb. 2, 2000), 9th Dist. No. 19699, at *3 (explaining the doctrine of negligence per se). Accordingly, we do not decide for the first time on appeal whether negligence per se applies to the Horvaths' claims. On remand, the trial court shall determine those issues.

{¶15} Because the trial court erred when it concluded that R.C. 4169.08 et seq. did not pertain to actions between skiers, the Horvaths' first assignment of error is sustained.

### Assignment of Error II

The Trial Court erred in granting summary judgment in favor of Appellees Ish because there is a genuine issue of material fact as to whether the conduct of Appellee David Ish was reckless when the evidence is construed most strongly in favor of Appellants.

{¶16} Upon concluding that R.C. Chapter 4169 did not govern the Horvaths' action against the Ishes, the trial court determined that Ohio common law applied. The trial court further concluded that because Angel and David were both participants in a recreational activity,

they each assumed the risks ordinarily associated with that activity. Thus, Angel could recover for her injuries only if David's actions were reckless or intentional.

{¶17} As outlined in our discussion of the first assignment of error, because R.C. Chapter 4169 applies, the premise of the trial court's conclusion is faulty. On remand, the trial court must consider the interplay of R.C. Chapter 4169 and the common law: if violation of the statutory duties of skiers gives rise to negligence per se; does that supplant the common law with respect to assumption of the risk in recreational activities? Because these issues were not explored in the trial court, this court will not undertake them on appeal. Thus, we do not reach the merits of the second assignment of error.

{¶18} Assuming without deciding that the Horvaths may recover only if David was acting in a reckless manner, a question of fact exists as to whether David was reckless. Eugene Horvath and Tyler Ish both witnessed the collision that resulted in Angel's injuries; however, each described a slightly different version of the events during their depositions. Moreover, pursuant to the summary-judgment standard, the facts must be construed in favor of the nonmovant, i.e., the Horvaths. See *Tompkins*, 75 Ohio St.3d at 448. For these reasons, summary judgment may not be appropriate regardless of the trial court's findings concerning negligence per se.

## CONCLUSION

{¶19} The trial court erroneously granted summary judgment in favor of the appellees, David Ish and his parents, Annette and David Ish. The judgment of the Summit County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DICKINSON, P.J., concurs.

CARR, J., dissents.

CARR, Judge, dissenting.

{¶20} I respectfully dissent because I disagree with the majority's conclusion that R.C. 4169.08(C) establishes a statutory duty of care between skiers. This provision should be construed within the context of the overall framework of R.C. Chapter 4169 and the legislature's intent in codifying specific "responsibilities" of a skier. See *Shroades v. Rental Homes, Inc.* (1981), 68 Ohio St.2d 20, 24-26 (focusing on the intent of the General Assembly in enacting the entire R.C. Chapter 5321 to determine whether R.C. 5321.04 created a civil standard of care by a landlord to a tenant).

{¶21} The Ohio General Assembly enacted R.C. 4169.01 through 4169.10 and R.C. 4169.99 in 1980 as part of a comprehensive statutory scheme similar to others around the country. Responding to the decision of the Vermont Supreme Court in *Sunday v. Stratton Corp.* (1978), 390 A.2d 398, in which it upheld a $1.5 million damage award in favor of a skier injured at a ski area, many states enacted similar statutes "to limit liability of ski area operators and thereby preserve the economic benefit reaped by the states from the ski industry." McCafferty, Skiers Find the "Fall Line" in Challenging the Constitutionality of Modern Ski Legislation (1991), 1 Seton Hall J.Sport L. 269. Although most are identified as ski-safety statutes, as observed by the Supreme Court of Connecticut, the specific intention of the legislation was to "preclude ski area operator liability for injuries arising out of inherent risks of the sport, while at the same time allowing claims sounding in negligence arising out of the risks that are

preventable by the ski area operator." *Jagger v. Mohawk Mountain Ski Area, Inc.* (2004), 849 A.2d 813, 825.

{¶22} This intent is evident in R.C. Chapter 4169. In R.C. 4169.08(A)(1), the General Assembly explicitly "recognizes that skiing as a recreational sport is hazardous to skiers regardless of all feasible safety measures that can be taken. It further recognizes that a skier expressly assumes the risk of and legal responsibility for injury, death, or loss to person or property that results from the inherent risks of skiing[.]" The statute sets forth a lengthy, but nonexhaustive, list of certain specific risks that are inherent in skiing that skiers expressly assume. R.C. 4169.08(B) then enumerates specific "legal responsibilities of a ski area operator to a skier with respect to any injury, death, or loss to person or property," and if the operator fails to comply with those responsibilities, it will be subject to liability for skiers' resulting injuries. In turn, subsection (C) sets forth certain reciprocal responsibilities that skiers owe the ski-area operator to keep the area safe by protecting themselves and others. Although the responsibilities include maintaining control of speed and course and refraining from causing a collision with another person while skiing, I do not believe that this language was intended to create a specific standard of care owed by one skier to another. See R.C. 4169.08(C)(1) and (2).

{¶23} Reading the language of R.C. 4169.08 along with R.C. 4169.09 does not defeat such a construction. R.C. 4169.09 provides that a "skier is liable for injury, death, or loss to person or property caused by the *** skier's failure to fulfill any of the responsibilities required by this chapter." Although the majority construes this language as imposing civil liability on a skier who causes another skier's injury by failing to comply with R.C. 4169.08(C), this language can also be construed to mean that a skier is liable for her own injuries if she fails to comply with her responsibilities to the ski-area operator under R.C. 4169.08(C). Given the ambiguity, I

would apply the latter construction of R.C. 4169.09 in keeping with the intention of this legislation to define the boundaries of liability on the part of the ski-area operator, not to codify a new standard of care for those who participate in the sport of skiing. See R.C. 1.49(A) and (B).

{¶24} Moreover, R.C. Chapter 4169 applies only to those who ski at ski areas, as the term "skier" is defined to include only those who use the "facilities of a ski area," not those who ski elsewhere. R.C. 4169.01(A). If the goal of R.C. Chapter 4169 were to create new standards of care between those who participate in the sport of skiing, the legislature could have defined the term "skier" more broadly to include those who ski at public parks, private slopes, and on other property that does not qualify as a ski area. The majority's construction of R.C. 4169.08(C) imposes specific duties between skiers, but only when they are skiing at a ski area. See R.C. 1.49(E). If the legislature had intended to enact specific tort duties between skiers, I believe that it would have imposed those duties on all participants in the sport, regardless of where they ski.

{¶25} Therefore, I would overrule the first assignment of error. I would also overrule the second assignment of error because the Horvaths have failed to oppose the motion for summary judgment with any evidence that the collision, and Horvath's resulting injuries, were the result of any reckless or intentional misconduct by David Ish. I would affirm the trial court's decision to grant summary judgment to the Ishes.