HORVATH ET AL., APPELLEES, *v*. ISH ET AL., APPELLANTS.

[Cite as *Horvath v. Ish,* 134 Ohio St.3d 48, 2012-Ohio-5333.]

*Torts—Sport or recreational activity—Skiers assume the ordinary risks of skiing, which include collisions with other skiers, and cannot recover for an injury unless it can be shown that the other skier's actions were reckless or intentional.*

(No. 2011-1089—Submitted April 25, 2012—Decided November 20, 2012.)

APPEAL from the Court of Appeals for Summit County,

No. 25442, 194 Ohio App.3d 8, 2011-Ohio-2239.

_____

SYLLABUS OF THE COURT

Skiers assume the ordinary risks of skiing, which include collisions with other skiers, and cannot recover for an injury unless it can be shown that the other skier's actions were reckless or intentional.

_____

LUNDBERG STRATTON, J.

I. Introduction

{¶ 1}  The issue before the court is what duty or standard of care is owed by one skier to another for purposes of determining tort liability.  We hold that skiers assume the ordinary risks of skiing, which include collisions with other skiers, and cannot recover for an injury unless it can be shown that the other skier's actions were reckless or intentional.

{¶ 2}  The court of appeals reversed the trial court's grant of summary judgment in favor of Ish and remanded the case to the trial court to determine whether Ish had violated any duties under R.C. 4169.08 or 4169.09 and if he did, whether negligence per se applied.  The court of appeals also held that a genuine

issue of material fact existed whether Ish was reckless. *Horvath v. Ish*, 194 Ohio App.3d 8, 2011-Ohio-2239, 954 N.E.2d 196, ¶ 18 (9th Dist.). We agree that there is a genuine issue of material fact, but only as to whether Ish's actions were more than negligent, that is, whether his actions were reckless or intentional under the common law. Therefore, we affirm the judgment of the court of appeals, albeit on somewhat different grounds, and remand the case to the trial court for proceedings consistent with our opinion.

## II. Facts and Procedural History

{¶ 3} On March 6, 2007, Angel Horvath and Eugene Horvath (the couple were married after the accident but before the complaint was filed) were skiing at Boston Mills ski resort. David Ish was snowboarding at Boston Mills on that same date, with his brother, Tyler, and their cousins. In the early evening, Angel and Eugene were skiing down Buttermilk Hill. David, Tyler, and their cousins were snowboarding on the same hill. David and his relatives proceeded through a terrain park[1] and then reentered Buttermilk Hill, where David and Angel collided. Angel was injured in the accident.

{¶ 4} The Horvaths filed a complaint against David Ish and his parents, alleging that David had acted negligently, carelessly, recklessly, willfully, and wantonly in causing the collision with Angel.

{¶ 5} The Ishes filed a motion for summary judgment, arguing that skiers are subject to primary assumption of the risk, which means that a defendant owes no duty of ordinary care to plaintiff. Thus, the Ishes argued that in order to recover, the Horvaths were required to prove that David had acted recklessly or intentionally in causing the collision. The Ishes further asserted that there was no evidence that David's actions were reckless or intentional.

---

1. A terrain park is an area where snowboarders and skiers can do tricks or stunts using various features including jumps, rails, and half-pipes. *See* R.C. 4169.01(I).

**{¶ 6}** In opposing the Ishes' motion for summary judgment, the Horvaths argued that R.C. 4169.08(C) imposes specific duties on skiers and that breaching those duties is negligence per se. The trial court granted the Ishes' motion for summary judgment.

**{¶ 7}** In a two-to-one decision, the court of appeals reversed the judgment of the trial court, stating that "[b]y reading R.C. 4169.08(C) in context with 4169.09, we find that it is evident that the legislature intended that skiers would be liable for injuries caused to others while skiing." *Horvath*, 194 Ohio App.3d 8, 2011-Ohio-2239, 954 N.E.2d 196, ¶ 13. The court of appeals remanded the cause to the trial court to determine whether David Ish's actions violated any of the responsibilities described in R.C. 4169.08(C) and, if so, whether any such violation invoked the doctrine of negligence per se. *Id*. at ¶ 14.

**{¶ 8}** This case is before this court pursuant to the acceptance of the Ishes' discretionary appeal. 129 Ohio St.3d 1503, 2011-Ohio-5358, 955 N.E.2d 386.

### III. Analysis

### R.C. Chapter 4169

**{¶ 9}** We begin our analysis by determining whether R.C. 4169.08 and 4169.09 apply to personal-injury litigation between skiers.

**{¶ 10}** When interpreting a statute, a court's paramount concern is legislative intent. *State ex rel. United States Steel Corp. v. Zaleski,* 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. "[T]he intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. However, "[i]n reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the

enactment to determine the intent of the enacting body." *State v. Wilson*, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997). "A court must examine a statute in its entirety rather than focus on an isolated phrase to determine legislative intent." *Massillon City School Dist. Bd. of Edn. v. Massillon,* 104 Ohio St.3d 518, 2004-Ohio-6775, 820 N.E.2d 874, ¶ 37. *See also* R.C. 1.42. With this guidance in mind, we examine R.C. Chapter 4169 in its entirety to determine whether R.C. 4169.08 and 4169.09 apply to personal-injury litigation between skiers.

{¶ 11} R.C. 4169.02 established a ski-tramway board that is authorized to create rules under R.C. Chapter 119 relating to "public safety in the construction, maintenance, mechanical operation, and inspection of passenger tramways."[2] R.C. 4169.03 requires that a tramway must be registered with the board before it can be operated. R.C. 4169.04 provides that tramways must be inspected. R.C. 4169.05 authorizes the board to hear complaints that the construction, maintenance, or mechanical operation of a tramway endangers public safety. R.C. 4169.06 permits a board member to suspend the operation of a tramway if the board determines that an "immediate danger exists." R.C. 4169.07 provides that ski-area operators are responsible for any tramway they construct and for the maintenance and operation of a passenger tramway in the operator's ski area. R.C. 4169.07 also states that passengers have certain enumerated responsibilities regarding their use of tramways. R.C. 4169.99 provides that ski-area operators are subject to a monetary fine if they fail to register their tramway with the board, fail to comply with an order from the board, or fail to comply with a rule issued by the board.

---

2. A "passenger tramway" is "a device used to transport passengers uphill, whether on skis or other devices or without skis or other devices, or in cars on tracks or suspended in the air, by the use of steel cables, chains, or belts or by ropes, and that is usually supported by trestles or towers with one or two spans." R.C. 4169.01(F). Chair lifts, rope tows, and conveyors are passenger tramways. R.C. 4169.01(F)(3), (5), and (7).

**{¶ 12}** R.C. 4169.08 insulates ski-area operators from liability for injuries that arise from the inherent risks of skiing and otherwise defines certain responsibilities applicable to ski-area operators and ski-area visitors. R.C. 4169.09 addresses the liability of ski-area operators and ski-area visitors for failing to comply with the responsibilities enumerated in R.C. 4169.08(C).

**{¶ 13}** And finally, R.C. 4169.10 immunizes ski-area operators for damages suffered by a person who was committing a theft at the time the person suffered the loss.

**{¶ 14}** It is evident that R.C. Chapter 4169, when viewed in its entirety, addresses certain obligations and limitations on liability pertaining to ski-area operators, as well as the relationship between ski-area operators and ski-area visitors. Consequently, neither R.C. 4169.08 nor 4169.09 applies to personal-injury litigation between skiers.

**{¶ 15}** Our conclusion is confirmed when we examine R.C. 4169.08 and 4169.09 in greater detail. R.C. 4169.08(A)(1) provides that "the general assembly recognizes that skiing as a recreational sport is hazardous to skiers regardless of all feasible safety measures that can be taken. It further recognizes that a skier expressly assumes the risk of and legal responsibility for injury, death, or loss to person or property that results from the inherent risks of skiing." R.C. 4169.08(A)(1) then provides a nonexhaustive list of conditions (e.g., slush) or objects (e.g., out-of-bounds barriers) that are inherent risks of skiing. R.C. 4169.08(A)(2) and (3) provide that ski-area operators are not liable for the death of or injury to ski-area visitors that occur in a freestyle terrain or tubing park, subject to certain qualifications. Thus, R.C. 4169.08(A) effectively insulates ski-area operators from personal-injury lawsuits that arise from the inherent risks of skiing. *See Stone v. Alpine Valley Ski Area*, 135 Ohio App.3d 540, 545, 734 N.E.2d 888 (11th Dist.1999); *Otterbacher v. Brandywine Ski Ctr., Inc.*, 9th Dist. No. 14269, 1990 WL 72327, *4 (May 23, 1990).

**{¶ 16}** R.C. 4169.08(B) and (C) also state that ski-area operators and skiers have certain enumerated responsibilities. For example, ski-area operators must mark certain snowmaking equipment, and skiers must ski within the limits of their ability. R.C. 4169.08(B)(1) and (C)(1). And R.C. 4169.09 states that a "ski area operator * * * or skier is liable for injury, death, or loss to person or property * * * caused by the operator's * * * or skier's failure to fulfill any of the responsibilities required by this chapter." Therefore, reading R.C. 4169.08(B) and (C) in context with R.C. Chapter 4169, we find that the responsibilities of ski-area operators and ski-area visitors are reciprocal. In other words, the General Assembly intended that ski-area operators owe skiers certain enumerated responsibilities, and in return, skiers owe ski-area operators certain enumerated responsibilities. Thus, we hold that R.C. 4169.08(C) does not create a duty of care that applies between skiers.

**{¶ 17}** Accordingly, we hold that R.C. Chapter 4169, and in particular R.C. 4169.08 and 4169.09, does not apply to personal-injury litigation between skiers.

Common Law

**{¶ 18}** Having determined that R.C. Chapter 4169 does not apply to personal-injury litigation between skiers, we turn to the common law to determine the proper standard of care applicable between skiers. This court has held that "[w]here individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either reckless or intentional as defined in [2 Restatement of the Law 2d, Torts, Section 500, and 1 Restatement of the Law 2d, Torts, Section 8A (1965)]." *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699, syllabus; *see also Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705. "Obviously, without our stating so, in *Marchetti* and *Thompson* we applied 'primary' assumption-of-risk principles in limiting the defendant's

liability." *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, ¶ 11. Primary assumption of the risk means that a defendant owes no duty whatsoever to the plaintiff. *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431-432, 659 N.E.2d 1232 (1996).

{¶ 19} Clearly, skiing is a sport or recreational activity. However, "only those risks directly associated with the activity in question are within the scope of primary assumption of risk." *Id.* at 432, citing *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925). "To be covered under the [primary-assumption-of-the-risk] doctrine, the risk must be one that is so inherent to the sport or activity that it cannot be eliminated." *Konesky v. Wood Cty. Agricultural Soc.*, 164 Ohio App.3d 839, 2005-Ohio-7009, 844 N.E.2d 408, ¶ 19 (6th Dist.), citing *Westray v. Imperial Pools & Supplies, Inc.*, 133 Ohio App.3d 426, 432, 728 N.E.2d 431 (6th Dist.1999). Where the risk at issue is not inherent, then a negligence standard applies. *See Gallagher,* 74 Ohio St.3d at 432, 659 N.E.2d 1232; *see also Pope v. Willey*, 12th Dist. No. CA2004-10-077, 2005-Ohio-4744, 2005 WL 2179317 (colliding with a truck on a road is not an inherent risk of riding an all-terrain vehicle); *Goffe v. Mowell*, 2d Dist. No. 98-CA-49, 1999 WL 55693 (Feb. 5, 1999) (faulty racetrack design is not an inherent risk of go-cart racing).

{¶ 20} The Supreme Court of Pennsylvania has recognized that "other skiers are as much a part of the risk in downhill skiing, if not more so, than the snow and ice, elevation, contour, speed and weather conditions. As anyone who has ever undertaken the sport of skiing is painfully aware, it is a sport in which it is common for the participants to lose control." *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 511, 762 A.2d 339 (2000). Other courts have also recognized that collisions between skiers are an inherent risk in the sport of skiing. *See Peterson ex rel. Peterson v. Donahue*, 733 N.W.2d 790, 793 (Minn.App.2007); *Cheong v. Antablin*, 16 Cal.4th 1063, 1069, 68 Cal.Rptr.2d 859, 946 P.2d 817

(1997); *Gern v. Basta,* 809 N.Y.S.2d 724, 725, 26 A.D.3d 807 (2006). We agree that collisions between skiers are an inherent risk of skiing.

{¶ 21} Accordingly, we hold that skiers assume the ordinary risks of skiing, which include collisions with other skiers, and cannot recover for an injury unless it can be shown that the other skier's actions were reckless or intentional.

IV. Conclusion

{¶ 22} The judgment of the court of appeals is affirmed, albeit on somewhat different grounds. We agree that there is a genuine issue of material fact to be considered, but only with regard to whether Ish's actions were more than negligent, that is, whether he acted recklessly or intentionally. Because a genuine issue of fact remains, the court of appeals was correct in holding that the trial court erred in granting summary judgment. Therefore, we affirm the appellate court's judgment, and we remand this cause to the trial court for further proceedings in accordance with this opinion.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 23} I concur in the majority's judgment affirming the appellate court's decision to reverse the trial court's granting of summary judgment. However, I do not agree with the majority's baffling interpretation of R.C. 4169.08 and 4169.09. I also do not agree that there is no common-law duty of care between skiers. If legal issues were ski slopes, the one raised in this case would be a bunny hill. Somehow, the majority has careened down the hill and wound up smashed through the wall of the lodge.

8

A Skier's Statutory Duties

**{¶ 24}** The fact that R.C. Chapter 4169 tends to limit the liability of ski-area operators from liability for injuries suffered by skiers does not mean that it leaves skiers without protection from *other skiers*. It makes perfect sense that a piece of legislation that shields ski-area operators from liability would also set forth a duty of care between skiers that would leave skiers, not ski facilities, liable for injuries they cause other skiers. Other states—Colorado (Colo.Rev.Stat.Ann. 33-44-109), Idaho (Idaho Code 6-1106), Maine (32 Maine Rev.Stat.Ann. 15217), Michigan (Mich.Comp.Laws Ann. 408.344), New Mexico (N.M.Stat.Ann. 24-15-10), and West Virginia (W.Va. Code Ann. 20-3A-8), for instance, manage to achieve that balance in their ski-safety statutory schemes. That balance is part of the prevailing view in states with ski statutes:

> In a skier collision case, the laws differ from state to state on the duty of care one skier owes to another. The jurisdictions can be divided into two classifications. The prevailing view holds skiers to a standard of reasonable care to avoid injury to another skier. The standard of care is usually founded on a statutory principle obliging a skier to exercise reasonable care and to yield the right of way to the skier below. One skier does not assume the risk of another's negligence; a skier collision is not a risk "inherent" in the sport as skiing is not a contact sport.

46 American Jurisprudence Proof of Facts 3d 1, Liability of Skier for Collision with Another Skier, Section 2 (1998).

**{¶ 25}** The duties between skiers, understood since Norwegians first strapped planks to their feet 4,500 years ago—ski under control and do not run

into another skier, among others—are now part of Ohio statutory law. Those duties are set forth in R.C. 4169.08:

> (C) A skier shall have the following responsibilities:
>
> (1) To know the range of the skier's ability to negotiate any slope or trail or to use any passenger tramway that is associated with a slope or trail, to ski within the limits of the skier's ability, to ski only on designated slopes and trails, to maintain control of speed and course at all times while skiing, to heed all posted warnings, and to not cross the track of a passenger tramway except at a designated area;
>
> (2) To refrain from acting in a manner that may cause or contribute to the injury of another person, to refrain from causing collision with any person or object while skiing, and to not place any object in a ski area that may cause another skier or a passenger to fall.

{¶ 26} Contrary to the majority's assertion, it is possible for the General Assembly in one statutory chapter to protect ski-area operators from liability while at the same time providing some protection for skiers. R.C. 4169.08(C)(2) specifically states that skiers have responsibilities to avoid causing injuries to or colliding with *another person*, but the majority states that those responsibilities are owed to ski-area operators, not other persons. R.C. 4169.08(C)(3) requires a person who is involved in a ski accident that injures another to identify himself before leaving the scene, presumably so that the person causing the collision can live up to his responsibilities.

{¶ 27} But it is R.C. 4169.09 that makes it crystal clear that a skier is liable for injuries he causes to *other skiers* by failing to meet the duties set forth in

R.C. 4169.08(C): "A * * * skier is liable for injury, death, or loss to person or property caused by the * * * skier's failure to fulfill any of the responsibilities required by this chapter." How can the majority ignore this simple statutory statement? How can this mean anything other than that a skier is liable for injuries suffered by another person as a result of the skier's failure to meet his statutory responsibilities? Why does this sentence appear in the statute if it does not establish responsibilities between skiers?

{¶ 28} If R.C. 4169.08 sets forth only duties between skiers and ski-area operators, the second sentence in R.C. 4169.09 would be sufficient to shield the ski area from liability. The second sentence of R.C. 4169.09 makes it clear that the ski-area operator is not liable for a skier's injuries caused by another skier: "A ski area operator * * * is not liable for injury * * * caused by another's failure to fulfill any of the responsibilities required of another by this chapter." In blunt terms, an injured person's only recourse is against the person who caused the injury.

{¶ 29} Finally, R.C. 4169.09 states that "[a] * * * skier is not entitled to recover for injury * * * caused by the * * * skier's failure to fulfill any of the responsibilities required by this chapter." That is, if a skier's injuries are caused by his own failure to meet his statutory responsibilities, he has recourse against no one.

{¶ 30} Read as a whole, R.C. 4169.09 states that if a skier violates his responsibilities, he is liable for injuries caused to another, that the ski-area operator is not liable for those injuries, and that a skier who causes his own injuries is not entitled to recover from another, including a ski-area operator, for his injuries. The statute provides protection from liability for ski-area operators from something they cannot control—the behavior of individual skiers—while at the same time making skiers responsible for injuries they cause for failing to

abide by the basic rules of skiing.  Only this interpretation provides meaning to all three of the sentences that make up R.C. 4169.09.

Liability for Breach of Skier's Statutory Duty in Michigan

**{¶ 31}** In *Rusnak v. Walker*, 273 Mich.App. 299, 729 N.W.2d 542 (2006), the court—a special panel called pursuant to Michigan law to resolve an appellate conflict—addressed whether a skier could sue another skier pursuant to Michigan's Ski Area Safety Act ("SASA").  The statutory scheme in Michigan is substantially similar to Ohio's.  The Michigan law places duties on skiers to ski safely and not injure other skiers, Mich.Comp.Laws Ann. 408.341 and 408.342, and assigns liability for injuries caused by skiers who violate those duties. ("A skier * * * who violates this act * * * shall be liable for that portion of the loss or damage resulting from that violation"). Mich.Comp.Laws Ann. 408.344.

**{¶ 32}** But Michigan's statutory scheme contains an important provision missing from Ohio's: it lists "collisions * * * with other skiers" as one of the inherent risks of skiing. Mich.Comp.Laws Ann. 408.342.  Such a provision is absent from Ohio's statutory declaration of the inherent risks of skiing.  R.C. 4169.08(A).

**{¶ 33}** Even so, the Michigan court held that despite a statutory recognition that colliding with other skiers is an inherent danger of skiing, a skier could recover for injuries caused by another skier's failure to live up to the responsibilities set forth in the SASA:

As we have already noted, we hold that the SASA assumption-of-risk provision contains clear and unambiguous language, providing in no uncertain terms that a collision between skiers is an obvious and necessary danger that inheres in the sport of skiing.  However, in those cases in which a plaintiff can establish that a defendant violated one of the specific duties imposed by the SASA, the

plaintiff can still recover damages to the extent that the defendant's violations caused the plaintiff's injuries. To state it differently, it is possible, and therefore skiers assume the risk, that a collision can occur between skiers when neither skier is violating his or her duties under the SASA. That is, it is an obvious and necessary danger of skiing that sometimes accidents simply happen. But, again, if it can be shown that the collision resulted from a violation of the act, then the violator is to be held liable for the damage caused, as provided under [Mich.Comp.Laws Ann.] 408.344.

*Rusnak*, 273 Mich.App. at 305, 729 N.W.2d 542.

{¶ 34} The court noted in *Rusnak* that if it were to hold that there is no liability for injuries to a skier caused by another skier's failure to meet his or her statutory duties, "the duties and liabilities placed on individual skiers would have no meaning." *Id.* at 309. But the majority does in this case what *Rusnak* warns against, finding that the statutory provision—"A * * * skier is liable for injury, death, or loss to person or property caused by the * * * skier's failure to fulfill any of the responsibilities required by this chapter"—is meaningless.

Ordinary Care

{¶ 35} In its remand to the trial court, the court of appeals suggested that the trial court should consider whether David Ish violated any of the duties outlined in R.C. 4169.08(C) and, if so, whether the violation would constitute negligence per se. *Horvath v. Ish*, 194 Ohio App.3d 8, 2011-Ohio-2239, 954 N.E.2d 196, ¶ 14. Violation of a statutory duty is not necessarily negligence per se, and it is not in this case.

{¶ 36} To successfully prosecute a claim for negligence, a plaintiff must prove that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach of the duty proximately caused the plaintiff's injury.

*Wellman v. E. Ohio Gas Co.*, 160 Ohio St. 103, 108–109, 113 N.E.2d 629 (1953). "[A] duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case." *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). In certain instances, the failure to perform a statutory duty is negligence per se, meaning that "the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff." *Id.*

**{¶ 37}** But negligence per se does not follow from every violation of a statutory duty; violation of a statute may simply constitute evidence of negligence. "[T]he distinction between the two depends upon the degree of specificity with which the particular duty is stated in the statute." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496, 727 N.E.2d 1277 (2000). As this court put it in *Swoboda v. Brown*, 129 Ohio St. 512, 196 N.E. 274 (1935), paragraph four of the syllabus:

> The distinction between negligence and "negligence per se" is the means and method of ascertainment. The former must be found by the jury from the facts, the conditions, and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required.

That is, when a statute requires performance of specific acts, a jury need determine only whether the specific acts were performed, and if it determines that they were not performed, the defendant is negligent per se; but when the statute instead sets forth general rules of conduct that must be followed, a jury must use its judgment in evaluating the circumstances to determine whether the defendant

14

was negligent. In the latter instance, the typical duty of care for negligence applies:

> Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case.

*Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954), paragraph one of the syllabus.

{¶ 38} In this case, the defendant may have violated several of the responsibilities of R.C. 4169.08(C)(1) and (2): failing to ski "within the limits of [his] ability," failing to "maintain control of [his] speed and course," failing to "refrain from acting in a manner that may cause or contribute to the injury of another person," and failing "to refrain from causing collision with any person or object while skiing." None of the defendant's violations could be established from the determination of one fact by a trier of fact; the trier of fact would need to consider "the facts, the conditions, and circumstances disclosed by the evidence." *Swoboda* at paragraph four of the syllabus. The responsibilities set forth in R.C. 4169.08(C)(1) and (2) are akin to the "rule of conduct" discussed in *Eisenhuth*; in those instances, negligence per se does not apply, and liability is "determined by the application of the test of due care as exercised by a reasonably prudent person

under the circumstances of the case." *Eisenhuth* at paragraph three of the syllabus.

{¶ 39} Thus, the General Assembly has set forth a statutory duty of ordinary care for skiers. Ingrained in that ordinary-care standard is the recognition that skiers are on skis, are on a slippery surface, and are engaged in a somewhat dangerous activity. R.C. 4169.08(C)(1) and (2) do not require expert ability by all skiers; they require common sense and an appreciation of very basic safety rules of skiing. When a skier fails to use ordinary care to meet the responsibilities set forth in R.C. 4169.08(C), he is liable for any injuries caused by his failure to live up to those rules of conduct, pursuant to R.C. 4169.09.

Common Law

{¶ 40} As stated above, I dissent from the majority's holding that R.C. 4169.09 does not recognize a cause of action between skiers. I also dissent from the majority's holding that a skier must prove that another skier was reckless to successfully assert a common-law claim against another skier. The crux of the majority's holding regarding the common law is that skiers owe no duty to each other because collisions between skiers are one of the inherent risks of skiing. I disagree and instead would follow the reasoned approach adopted by the Supreme Court of Connecticut in *Jagger v. Mohawk Mountain Ski Area, Inc.*, 269 Conn. 672, 849 A.2d 813 (2004), in which the court held that "the standard of care implicated in the context of the sport of skiing is that of a duty to refrain from unreasonable conduct and that liability may attach for negligent behavior." *Id.* at 698.

{¶ 41} Like many other states, Connecticut has a ski-safety statutory scheme; such statutory schemes are like snowflakes—no two are exactly alike. *See, e.g.,* Frakt & Rankin, *Surveying the Slippery Slope: The Questionable Value of Legislation to Limit Ski Area Liability*, 28 Idaho L.Rev. 227, 230 (1992), fn. 12. The Connecticut statute at issue in *Jagger* did not contain the declaration found in

16

the Ohio and Michigan statutes that a skier is liable to another skier for injuries caused by the skier's failure to meet his or her statutory responsibilities. The Connecticut statute did state that collisions with other skiers are an inherent risk of skiing, Conn.Gen.Stat. 29-212; the court in *Jagger* held that that provision did not apply to lawsuits between skiers. *Jagger*, 269 Conn. at 697, 849 A.2d 813, fn. 21.

**{¶ 42}** In *Jagger*, the court applied a four-part test "to evaluate the various policy considerations relevant to the determination of the extent of the defendant's duty." *Id.* at 700. The court had developed the test in *Jaworski v. Kiernan*, 241 Conn. 399, 696 A.2d 332 (1997), to determine the standard of care applicable to participants in a soccer game. The elements of the test include

> "(1) the normal expectations of participants in the sport in which the plaintiff and the defendant were engaged; (2) the public policy of encouraging continued vigorous participation in recreational sporting activities while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions."

*Jagger* at 700, quoting *Jaworski* at 407.

**{¶ 43}** As for the first factor, the normal expectations of the participants in the sport, I agree with the *Jagger* court that although ski collisions can be frequent, skiers expect their fellow skiers to abide by the commonly accepted, fundamental rules of skiing:

> While collisions with other skiers are fairly common, frequency of occurrence is not the ultimate touchstone in evaluating the expectations of participants in the sport. Rather, we perceive the

expectations of skiers to be that fellow participants in the sport will conduct themselves in a manner befitting the dangerous potentialities attendant with the sport. Thus, skiers will expect that other skiers will follow the rules and generally accepted practices of the sport of skiing. Indeed, our statutory scheme regarding ski liability confirms that skiers should possess such expectations as they take part in the sport. * * * The normal expectations of skiers will be that fellow skiers will ski in a reasonable and appropriate manner.

*Id.* at 701-702.

{¶ 44} Like Connecticut's, our state's statutory scheme sets forth responsibilities for skiers that should create in the minds of other skiers the expectation that collisions are not an acceptable part of the sport.

{¶ 45} Further, skiers are reminded by signs throughout ski areas of appropriate behavior. The Skier's Responsibility Code, promulgated by the National Ski Areas Association, reminds skiers of common safety rules:

Always stay in control, and be able to stop or avoid other people or objects.

People ahead of you have the right of way. It is your responsibility to avoid them.

You must not stop where you obstruct a trail or are not visible from above.

Whenever starting downhill or merging into a trail, look uphill and yield to others.

Always use devices to help prevent runaway equipment.

18

> Observe all posted signs and warnings. Keep off closed trails and out of closed areas.
>
> Prior to using any lift, you must have the knowledge and ability to load, ride and unload safely.

http://www.nsaa.org/nsaa/safety/responsibilitycode (accessed Nov. 1, 2012).

**{¶ 46}** Unlike in sports like football, basketball, or soccer, in which contact with other participants is part of the very nature of the sport, contact with another individual in skiing is outside the nature of the sport; any contact at all between skiers transforms skiing into an unacceptably dangerous proposition. The expectation among skiers is that their fellow skiers appreciate that safety is essential for everyone's enjoyment of the sport.

**{¶ 47}** As for the second factor—balancing the encouragement of participation in the sport against concern for the safety of participants—I agree with the court in *Jagger* that encouraging responsible behavior by skiers tends to encourage participation:

> As for the second *Jaworski* factor, we conclude that the balancing of the public policy of the encouragement of vigorous participation in the sport of skiing and the protection of the safety of its participants weighs in favor of a negligence standard. We believe that requiring skiers to participate in the reasonable manner prescribed by the rules of the sport actually will promote participation in the sport of skiing. Should the threshold for liability be placed at a level that only reckless or intentional misconduct can serve as grounds for liability, many of the potential harms caused by coparticipants in the sport will go unremedied and, therefore, dissuade potential participants from taking part in

the sport. Additionally, a standard of reasonableness also operates
to protect the safety of participants in the sport of skiing.

*Jagger,* 269 Conn. at 702-703, 849 A.2d 813.

**{¶ 48}** I agree that there is a minimal price to pay, if any, for increased safety on ski slopes. That skiers could feel safer when skiing would tend to inure to the benefit of participation rates. Colorado, whose economy is much more dependent on skiing than Ohio's, statutorily recognizes the right of skiers to recover damages from other skiers who cause injuries. Colo.Rev.Stat.Ann. 33-44-109 ("a skier is not precluded under this article from suing another skier for any injury to person or property resulting from such other skier's acts or omissions. Notwithstanding any provision of law or statute to the contrary, the risk of a skier/skier collision is neither an inherent risk nor a risk assumed by a skier in an action by one skier against another").

**{¶ 49}** The third factor, the potential increase in litigation, is a minimal factor in the analysis. Contact with other skiers is not a regular part of skiing; collisions are rare enough that our courts would not be clogged by claims. As the court recognized in *Jagger*, this situation might be different in other sports:

> For instance, in *Jaworski* we recognized quite correctly that the imposition of a negligence standard in contact sports would result undesirably in the potentiality of a civil action arising out of any foul, any hit batsman, or any clipping penalty. The same potential for undesirable numbers of civil actions is not present in the context of skiing. As discussed previously, abiding by the rules of the sport of skiing will eliminate the overwhelming majority of contact between skiers.

*Id.* at 703.

{¶ 50} The fourth element of the *Jaworski* test is a consideration of the law in other jurisdictions. We have the benefit of relying on the court's well-reasoned decision in *Jagger.* Jagger relied on *Novak v. Virene,* 224 Ill.App.3d 317, 321, 166 Ill.Dec. 620, 586 N.E.2d 578 (1991), in which the court stated:

> As in the individual sports of running and bicycling, there is the possibility of collisions in downhill skiing. But by one's participation in the sport, one does not voluntarily submit to bodily contact with other skiers, and such contact is not inevitable. Therefore, the concern that the possibility of a negligence lawsuit would damper vigorous participation is inapplicable to downhill skiing. There is no reason to expand the limited contact sports exception to exempt downhill skiers from negligence liability if they negligently collide with other skiers. Many activities in life are fraught with danger, and absent a specific assumption of risk, one may obtain damages when injured by another's negligence. Defendant's conduct should be governed by ordinary negligence standards.

*Id.* at 321.

{¶ 51} In a Utah case, *Ricci v. Schoultz*, 963 P.2d 784, 786 (Utah App.1998), the court held that "a skier does have a duty to other skiers to ski reasonably and within control. However, an inadvertent fall on a ski slope, alone, does not constitute a breach of this duty." Even though there was no negligence in the *Ricci* case, the case did hold that negligence was the proper legal standard to apply.

**{¶ 52}** Interpreting Vermont law in *Dillworth v. Gambardella*, 970 F.2d 1113, 1123 (2d Cir.1992), the court held that a skier can be liable to another skier for injuries caused by the skier's negligence, but made clear that not every collision is caused by negligence:

> The law is clear. "[T]he standard of conduct needed to discharge a duty of care in any given situation [is] measured in terms of the avoidance of reasonably foreseeable risks to the person to whom such duty is owed." *Green v. Sherburne Corp.,* 137 Vt. 310, 403 A.2d 278, 280 (1979). Like all others, skiers owe that degree of care an ordinary prudent person would exercise under like or similar circumstances. *See LaFaso v. LaFaso,* 126 Vt. 90, 223 A.2d 814, 817-18 (1966). One skier is not the insurer of another skier's safety nor, absent negligence, is one skier liable to another for inadvertent or accidental contact. *See, e.g., LaVine v. Clear Creek Skiing Corp.,* 557 F.2d 730, 734-35 (10th Cir.1977).
>
> Thus, a jury might conclude that skiers who lose control even while exercising due care—that is, have breached no duty owed to other skiers—may pose a danger which is inherent, obvious and necessary to participants in the sport of skiing. * * * "If the fall is due to no breach of duty on the part of the defendant, its risk is assumed in the primary sense, and there can be no recovery." *Sunday* [*v. Stratton Corp*], [136 Vt. 293, 302], 390 A.2d 398 [(1978)]. Where the facts on assumption and breach of duty are in dispute and more than one reasonable inference may be drawn from them, the question of negligence is for the jury. *See LaFaso,* 223 A.2d at 819.

*Id.* at 1122. Although a skier does assume some risks of skiing, as for the behavior of other skiers, "the only risks [a] plaintiff * * * could be said to have assumed are those which defendant in the exercise of reasonable care under the circumstances could have avoided." *Id.* at 1123.

{¶ 53} Further, in *Peterson v. Chichester*, 157 Vt. 548, 600 A.2d 1326 (1991), the Vermont Supreme Court upheld a jury verdict in a collision-between-skiers case in which the negligence of the defendant and comparative negligence of the plaintiff were at issue. Similarly, in *Stewart v. Rice*, 120 Idaho 504, 817 P.2d 170 (1991), the Supreme Court of Idaho decided a case involving the negligence of a skier in a collision between skiers.

{¶ 54} Applying the four *Jaworski* factors to the sport of skiing leads to the conclusion reached by the court in *Jagger*: "the proper standard of care owed by coparticipants in the sport of skiing is that of reasonable care." *Jagger,* 269 Conn. at 704, 849 A.2d 813. Even assuming that the majority correctly found that no statutory duty exists between skiers in Ohio, it should have found a common-law duty of reasonable care between skiers, as courts in Connecticut, Illinois, Utah, Vermont, and Idaho have done.

Recklessness

{¶ 55} I dissent from the majority's holdings that neither Ohio's ski statutes nor the common law creates a duty between skiers. An accident like the one in this case is not one that a person would assume would take place when undertaking the pleasant family activity of skiing. Children, seniors, beginners, and handicapped people use ski slopes; to require, as the majority does, no greater standard of care than to refrain from recklessness will make Ohio's ski areas more dangerous for everyone. "[C]ontact between skiers is neither a part of the sport that skiers agree to confront by their participation, nor is it an inevitable byproduct of the sport of skiing." *Jagger,* 269 Conn. at 704, 849 A.2d 813.

**{¶ 56}** However, the majority admits that the defendant is liable for the plaintiff's injuries if he was acting recklessly on the slopes on the day in question. I agree that if recklessness is the standard of care in this case, there is a genuine issue of fact for a trier of fact to determine. There is testimony establishing that the defendant was uphill of Angel Horvath and merging onto the slope in question, looking backward, and making a sudden change of course when he struck her. Evidence supports the plaintiffs' contention that the defendant violated numerous statutory responsibilities contained in R.C. 4169.08(C), a statute that sets forth *fundamental* safety rules for skiers. Those rules are basic and essential for skier safety. The flouting of those rules should be considered by a trier of fact in determining recklessness.

Conclusion

**{¶ 57}** The trial judge erred by granting summary judgment in a case that presents factual issues for trial. The case has now snowballed into a case that eviscerates a statutory scheme that has well served the sport and industry of skiing for a long time. The General Assembly ensured that we owe a greater duty, a duty of ordinary care, to each other. The majority has removed that duty and today has made skiing in Ohio appreciably more dangerous. I trust that Ohio's skiers will not look to this court, but instead to their common sense, their peers, and information provided by ski areas to determine what is acceptable behavior on Ohio's ski slopes.

_____

Paul W. Flowers Co. and Paul W. Flowers; and Sennett Fischer, L.L.C., and James A. Sennett, for appellees.

Gallagher Sharp, Timothy J. Fitzgerald, and Jeremy V. Farrell, for appellants.

_____